OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal represents yet another attempt at the highly elusive goal of defining with precision statutory terms within
 
 *461
 
 Labor Law article 10 so as to minimize the need for litigation. Finding that no precedent of this Court four-square controls the definition of the term “altering” as used in Labor Law § 240 (1) or in the Industrial Code provisions referenced by Labor Law § 241 (6), the Second Circuit certified the following questions to us:
 

 “(1) where an electrician fell from a ladder while employed to ‘chop a hole through a block wall with a hammer and chisel’ and route a conduit pipe and wire through the hole to install a wall clock, does New York Labor Law § 240 (1) apply on the grounds that his work constituted an alteration or repair of a ‘building’ or ‘structure’ within the meaning of the statute; and
 

 “(2) does New York Labor Law § 241 (6) apply, based on his work being ‘alteration,’ ‘repair,’ or ‘maintenance’ within the meaning of the New York State Industrial Code, 12 N.Y.C.R.R. et seq.” (135 F3d 261, 262.)
 

 We now answer both questions in the affirmative, concluding that because the work in which plaintiff was engaged constituted a significant physical change to the configuration or composition of the building, he was “altering” it within the meaning of the law.
 
 [1]
 

 Facts
 

 The certified questions arise from the following facts. Plaintiff Richard Joblon was an electrician in the employ of third-party defendant Geller Electric Construction and Maintenance. Geller was hired by defendant Avon Products to perform ongoing service as a house electrician at office space Avon leased from defendant Sheldon H. Solow at 9 West 57th Street in New York City.
 

 Joblon had been working in the Avon space for a short time when a Geller supervisor directed him to install an electric wall clock in the mail room on the building’s twentieth floor. Because the room lacked an outlet that could accommodate the clock, it was necessary for Joblon and a co-worker, George Schwab, to extend the electrical wiring from an adjacent utility room through a concrete block wall separating the rooms. To do so, they had to tap an existing power source in the utility room, run wires encased in conduit to the site of the hole in the wall of the utility room, break through the wall separating the
 
 *462
 
 rooms with a hammer and chisel, and ultimately direct the wires through the wall.
 

 In the process of chiseling a hole between the utility room and the mail room to allow the extended wiring to pass through, Joblon and Schwab had to stand on a ladder. However, the contents and dimension of the utility room prevented the ladder from being fully opened, and it was instead only partially opened and leaned against the wall. Initially, Joblon and Schwab took turns standing on the ladder and chiseling while the other remained on the ground and secured its base. However, in the afternoon, Schwab went to the mail room on the other side of the wall to receive the extended electrical wire that Joblon had passed through the wall. Joblon ascended the unsecured ladder; while completing his work, the ladder shifted and he fell backward, sustaining injury.
 

 Joblon and his wife brought suit in the United States District Court for the Southern District of New York, alleging negligence as well as violations of Labor Law § 240 (1) and § 241 (6). At the close of discovery, Joblon moved for partial summary judgment, and Geller cross-moved for summary judgment on liability under Labor Law § 240 (1). The District Court denied Joblon’s motion for summary judgment on the Labor Law § 240 (1) claim and granted Geller’s, concluding that it was more consistent with the underlying purpose of the statute to find that Joblon was engaged in mere “modification or extension of an existing system” and therefore was not repairing or altering the building (914 F Supp 1044, 1048). Defendants Solow and Avon thereafter sought summary judgment dismissing the Labor Law § 241 (6) claim, which the District Court again granted, concluding that because Joblon was not “altering” under Labor Law § 240 (1), he was not performing “construction” work within the meaning of Labor Law § 241 (6) (945 F Supp 734, 739). On Joblon’s appeal to the Second Circuit, a panel of that court certified the present two questions to us (22 NYCRR 500.17).
 

 Analysis
 

 Special statutory protections against the dangers of elevation-related hazards in the workplace have existed in this State since 1885
 
 (see generally, Wingert v Krakauer,
 
 76 App Div 34; L 1885, ch 314). More than a century later, these protections are contained in Labor Law § 240 (1), originally enacted in 1921, and which today reads:
 

 
 *463
 
 “All contractors and owners and their agents * * * in the erection, demolition, repairing,
 
 altering,
 
 painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed” (Labor Law § 240 [1] [emphasis added]).
 

 In
 
 Zimmer v Chemung County Performing Arts
 
 (65 NY2d 513), we noted that “ ‘this statute is one for the protection of work[ers] from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed’ ”
 
 (id.,
 
 at 520-521, quoting
 
 Quigley v Thatcher,
 
 207 NY 66, 68;
 
 see also,
 
 1969 NY Legis Ann, at 407-409). Consistent with the legislative objective of worker protection for elevation-related risks, we have given the statute an expansive reading in a variety of circumstances
 
 (see, e.g., Felker v Corning Inc.,
 
 90 NY2d 219, 224;
 
 Gordon v Eastern Ry. Supply,
 
 82 NY2d 555, 559;
 
 Lombardi v Stout,
 
 80 NY2d 290, 296).
 

 Even against that backdrop, definition of particular terms within the statute continues to proliferate litigation. The narrow question whether a plaintiff was “altering” a building or structure — the question before us here — has proved no exception. Indeed, the Appellate Divisions have reached inconsistent results on essentially indistinguishable facts
 
 (compare, Tauriello v New York Tel. Co.,
 
 199 AD2d 377,
 
 and Dedario v New York Tel. Co.,
 
 162 AD2d 1001 [“altering”],
 
 with Kesselbach v Liberty Haulage,
 
 182 AD2d 741,
 
 and Borzell v Peter,
 
 285 App Div 983 [not “altering”];
 
 see also, Malsch v City of New York,
 
 232 AD2d 1 [noting conflict]). As the District Court observed, “the cases [provide] ample authority for either side’s case” (921 F Supp 218, 220).
 

 In support of the District Court’s conclusion that Joblon was not engaged in “altering” at the time of his accident, defendants point to the title of article 10 of the Labor Law, “Building Construction, Demolition and Repair Work,” and note that it was created to place “ultimate responsibility for safety practices
 
 at building construction jobs
 
 where such responsibility actually belongs, on the owner and general contractor” (1969 NY Legis Ann, at 407 [emphasis added]). Thus, defendants suggest that a guiding principle for courts should be to exam
 
 *464
 
 ine the context of the work leading to the injury, and only when it is performed as part of a building construction job should Labor Law § 240 (1) liability attach.
 

 Such a rule would, of course, ignore our prior holdings that workers injured while cleaning a railway car
 
 (Gordon v Eastern Ry. Supply,
 
 82 NY2d 555,
 
 supra),
 
 repairing an electrical sign
 
 (Izrailev v Ficarra Furniture,
 
 70 NY2d 813) or painting a house
 
 (Rivers v Sauter,
 
 26 NY2d 260) come within the ambit of the statute even though they were not working at a building construction site. Furthermore, we have already defined a “structure,” for purposes of Labor Law § 240 (1), as “ ‘any production or piece of work artificially built up or composed of parts joined together in some definite manner’ ”
 
 (Lewis-Moors v Contel of N. Y.,
 
 78 NY2d 942, 943). Now to limit the statute’s reach to work performed on a construction site would eliminate possible recovery for work performed on many structures falling within the definition of that term but found off construction sites
 
 (see, e.g., id.
 
 [telephone pole];
 
 Gordon v Eastern Ry. Supply,
 
 82 NY2d 555,
 
 supra
 
 [railway car]).
 

 Plaintiff, by contrast, urges that we adopt the definition of “altering” framed by the Appellate Division in
 
 Cox v International Paper Co.
 
 (234 AD2d 757). In
 
 Cox,
 
 the court considered whether plaintiff, who fell from a height while replacing some piping on a paper machine, was engaged in “altering” at the time of his injury. After comparing a number of cases in which alteration and liability had been found with a line of contrary decisions, the court concluded that the “distinguishing feature between the former and latter cases is that in the latter, the activities resulted in no change in the building or structure”
 
 (id.,
 
 at 759). While denying summary judgment for plaintiff on other grounds, the court held that plaintiff’s work had indeed changed the paper machine, and therefore he was engaged in “altering” within Labor Law § 240 (1).
 

 While Joblon’s bright-line definition has much to commend it, we are concerned that allowing every change in a structure to qualify as an alteration gives the statute too broad a reach. A task as simple and routine as hammering a nail could, taken literally, be viewed as a change in the structure. Adopting plaintiff’s interpretation of the
 
 Cox
 
 rule “if taken to its logical conclusion, would be ‘tantamount to a ruling that all work related falls off ladders will fall within Labor Law Section 240’ ”
 
 (Giambalvo v National R. R. Passenger Corp.,
 
 850 F Supp 166, 170 [ED NY]). Moreover, treating every change in the structure as an alteration would render superfluous such statutory terms
 
 *465
 
 as “painting” and “pointing,” which could be read as changes to a structure.
 

 Nor would defining every change in a structure as an alteration hold true to our precedents. Although the
 
 Cox
 
 court attempted to distinguish
 
 Smith v Shell Oil Co.
 
 (85 NY2d 1000), a fair application of plaintiffs rule to that case — where we concluded that a worker injured while changing a lightbulb on an illuminated sign was involved only in routine maintenance and stated no claim under Labor Law § 240 (1) — would result in liability. To remove and replace a burnt-out bulb, strictly speaking, is to change the sign. Similarly, the minimal cleaning of windows we deemed beyond the reach of the statute in
 
 Brown v Christopher St. Owners Corp.
 
 (87 NY2d 938,
 
 rearg denied
 
 88 NY2d 875) also might well be an alteration under such a definition. Such routine maintenance and decorative modifications should fall outside the reach of the statute.
 

 We conclude that “altering” within the meaning of Labor Law § 240 (1) requires making a
 
 significant
 
 physical change to the configuration or composition of the building or structure. Such a rule implements the legislative purpose of providing protection for workers, is fully consistent with our precedents and at the same time excludes simple, routine activities we have previously placed outside the scope of the statute.
 
 [2]
 

 Next applying this rule to the facts presented, we hold that— although the question is close — the work performed by Joblon was a significant physical change to the configuration or composition of the building. Joblon did more than the routine act of standing on a ladder to hang a clock on a wall. Bringing an electrical power supply capable of supporting the clock to the mail room, which required both extending the wiring within the utility room and chiseling a hole through a concrete wall so as to reach the mail room is more than a simple, routine activity and is significant enough to fall within the statute. Defendants’ assertions that Joblon’s job title, job description and normal duties involved only routine maintenance are irrelevant to our determination. It is not important how the parties generally characterize the injured worker’s role but rather what type of work the plaintiff was performing at the time of injury. That Geller was hired as a “house electrician” to
 
 *466
 
 perform routine maintenance for Avon is likewise tangential to our determination.
 

 Having concluded that Joblon was engaged in “altering” under Labor Law § 240 (1) at the time of his injury, we likewise determine that the facts presented could support a claim under Labor Law § 241 (6), which requires that all “areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety.”
 

 Liability under Labor Law § 241 (6) is not limited to accidents on a building construction site
 
 (see, Mosher v State of New York,
 
 80 NY2d 286). As in
 
 Jock v Fien
 
 (80 NY2d 965, 967), we look to the regulations contained in the Industrial Code (12 NYCRR 23-1.4 [b] [13]) to define what constitutes construction work within the meaning of the statute
 
 (see also, DaBolt v Bethlehem Steel Corp.,
 
 92 AD2d 70, 73-74,
 
 Iv dismissed
 
 60 NY2d 554). Because the Industrial Code includes “work of the types performed in the construction, erection,
 
 alteration,
 
 repair, maintenance, painting or moving of buildings or other structures” in the definition of construction work (12 NYCRR 23-1.4 [b] [13] [emphasis added]), we conclude that plaintiff could state a claim under Labor Law § 241 (6).
 

 Accordingly, the certified questions should be answered in the affirmative.
 

 Judges Bellacosa, Smith, Levine and Wesley concur; Judges Titone and Ciparick taking no part.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the affirmative.
 

 [1]
 

 . Our conclusion that plaintiff was engaged in an alteration makes it unnecessary for us to reach the alternative terms included in the certified questions.
 

 [2]
 

 . Defendants’ complaint, that even defining “altering” as we do today will allow too many Labor Law § 240 (1) claims to go forward, is better addressed to the Legislature. The Legislature can, of course, revise the statute to limit its reach if it so intends (see,
 
 e.g.,
 
 L 1980, ch 670, § 1 [creating exception for owners of one- and two-family dwellings]).