Norberto PRATS and Selene Prats,
Plaintiffs–Appellants,

v.

The PORT AUTHORITY OF NEW
YORK AND NEW JERSEY,
Defendant–Appellee.

Docket No. 02–7212.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 2002.

Certification to the New York Court
of Appeals Dec. 30, 2002.

Arnold E. DiJoseph, III, DiJoseph & Portegello, P.C., New York, NY, for Appellants.

Richard Lerner, Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Helmut Beron, Jeffrey Ettenger, of counsel), New York, NY, for Appellee.

Before: MESKILL, SACK, and KATZMANN, Circuit Judges.

SACK, Circuit Judge.

Plaintiffs-appellants Norberto Prats ("Prats") and Selene Prats appeal from the judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) granting the motion of defendant-appellee The Port Authority of New York and New Jersey ("Port Authority") for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the plaintiffs' claims under New York La-

bor Law §§ 240(1) and 241(6).* The plaintiffs contend that the district court erred in concluding that the work that Prats was performing at the time of his injury—inspecting air conditioning units—is not protected by New York Labor Law § 240(1).

We conclude that we have insufficient direction from the courts of New York with respect to the question whether inspections of construction work fall within the scope of New York Labor Law § 240(1) confidently to decide this appeal. We therefore certify this question to the New York Court of Appeals. We respectfully request the Court's guidance on this issue.

## BACKGROUND

This action was precipitated by Prats's accidental fall. At the time, he was employed as a mechanic by AWL Industries, Inc. ("AWL"), a company that contracted with the Port Authority to repair and rehabilitate the air handling units of The World Trade Center. According to Prats, the work included overhauling many of the air conditioning units, which often required tearing down and rebuilding walls, and leveling out and pouring concrete on the floors. A two-man crew then inspected the completed work. During these inspections, the crew would itself from time to time perform minor repairs, but would write up a new work order for others to fulfill if significant additional repairs were required.

On the night of the accident, Prats and co-worker Bob Card were assigned to inspect units on various floors of the Trade Center. One of the units was suspended from an approximately thirty-foot-high ceiling. Card leaned a ladder against the unit, and Prats held the ladder while Card climbed up to the unit. Card got off the ladder, sat on the unit, and began inspecting it. Deciding that the unit needed minor repair, Card called down to Prats asking for a wrench. Prats began climbing up the ladder to bring the wrench to Card. When Prats was about fifteen feet up the ladder, he felt the ladder begin to slide. As he tried to scramble back down the ladder, it slid out from under him. Prats fell, but before he hit the floor, the ladder hit the ground, bounced back up, and hit him in the face, injuring him.

Prats subsequently moved to Florida to join his wife, plaintiff Selene Prats. Norberto Prats and Selene Prats then filed suit in the United States District Court for the Southern District of New York against the Port Authority. Their complaint asserts claims for negligence, breach of duty to provide a safe workplace, violations of New York Labor Law §§ 200, 240(1), and 241(6), and loss of consortium. The Port Authority moved for partial summary judgment on the New York Labor Law claims, and the district court, in an October 12, 2001 memorandum decision, granted the motion as to the § 240(1) and § 241(6) claims, but denied it as to the § 200 claim. *Prats v. Port Authority of New York and New Jersey*, No. 00 Civ. 5309, 2001 WL 1218380, 2001 U.S. Dist. LEXIS 16398 (S.D.N.Y. Oct. 12, 2001). The court concluded that Prats was not within the class of workers protected by § 241(6), and that at the time of his injury he was not performing the type of work protected by § 240(1). At the plaintiffs' request, the district court issued an order on January 24, 2002, dismissing the § 200 claim with prejudice. In a January 28, 2002 judgment, the court dismissed the remainder of the complaint in its entirety.

---

* In response to the plaintiffs' request, the district court dismissed with prejudice the plaintiffs' claim under New York Labor Law § 200. No appeal is taken from that dismissal.

On appeal, the plaintiffs contend that the work Prats was performing at the time of his injury—inspecting construction work—falls within the purview of New York Labor Law § 240(1). We respectfully certify to the New York Court of Appeals the question of whether it does.

## DISCUSSION

New York Labor Law § 240(1) reads, in pertinent part:

All contractors and owners and their agents ... in the erection, demolition, *repairing, altering,* painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240(1) (emphasis added). Under the statute as interpreted by New York courts, " 'altering' ... requires making a *significant* physical change to the configuration or composition of the building or structure." *Joblon v. Solow,* 91 N.Y.2d 457, 465, 695 N.E.2d 237, 241, 672 N.Y.S.2d 286, 290 (1998) (emphasis in original); *accord Weininger v. Hagedorn & Co.,* 91 N.Y.2d 958, 960, 695 N.E.2d 709, 710, 672 N.Y.S.2d 840, 841 (1998). "Repairing" requires "proof that the machine or object being worked upon was inoperable or not functioning properly" prior to the work in question. *Goad v. S. Elec. Int'l, Inc.,* 263 A.D.2d 654, 655, 693 N.Y.S.2d 301, 303 (3d Dep't 1999); *see also Smith v. Shell Oil Co.,* 85 N.Y.2d 1000, 1002, 654 N.E.2d 1210, 1211, 630 N.Y.S.2d 962, 963 (1995) (finding that "an illuminated sign with a burnt-out lightbulb is not broken" and changing the lightbulb does not constitute repair). Repairs and altera-

tions that do not meet these definitions are considered "routine maintenance" and "fall outside the reach of the statute." *Joblon,* 91 N.Y.2d at 465, 695 N.E.2d at 241, 672 N.Y.S.2d at 290.

In *Joblon,* an electrician fell and injured himself while attempting to install an electric wall clock. *Id.* at 461–462, 695 N.E.2d at 239, 672 N.Y.S.2d at 288. Because there was no electric outlet, the installation required chiseling through a concrete wall to extend the electric wiring from the adjacent room. *Id.* The New York Court of Appeals, in response to a question certified by the Second Circuit, held that the installation involved "more than a simple, routine activity" and was "significant enough to fall within the statute." *Id.* at 465, 695 N.E.2d at 242, 672 N.Y.S.2d at 291.

In the case at bar, the Port Authority hired AWL to repair and rehabilitate the air handling units at the World Trade Center. It is uncontested that the work included replacing large air filtering systems, measuring twenty feet by twenty feet, that were built into the walls. Replacing these filters required tearing down the walls and then rebuilding them, and often involved leveling the floor and laying concrete. Replacing units and rebuilding walls seems at least as "significant" a physical change as the chiseling and wiring that the *Joblon* Court found to be within the scope of the statute.

The Port Authority argues that it is the nature of Prats's activities at the time of injury, not the nature of the project as a whole, that determines whether his actions are covered by the statute. At the time of his injury, Prats was not rebuilding walls; he was inspecting work already completed. The *Joblon* Court, in determining that Mr. Joblon's work fell within the scope of § 240(1), focused on what Mr. Joblon was doing at the time of his injury, namely,

extending wiring and chiseling through a wall. The Court stated that it was immaterial that Mr. Joblon was hired to perform routine maintenance work that would not fall under the statute. It reasoned that "[i]t is not important how the parties generally characterize the injured worker's role but rather what type of work the plaintiff was performing at the time of injury." *Id.* at 465, 695 N.E.2d at 242, 672 N.Y.S.2d at 291.

But there are other cases decided by the New York Supreme Court, Appellate Division, both before and after *Joblon*, that conclude that how the parties generally characterize the injured worker's role *is* significant. These decisions call into question whether the quoted statement from *Joblon* was intended to be part of its holding. In *Reinhart v. Long Island Lighting Co.*, 91 A.D.2d 571, 457 N.Y.S.2d 57 (1st Dep't 1982), the First Department held that two plumbers, who were employed by the defendant and who fell from a scaffold on a construction site while discussing a payroll problem, were protected by the statute even though they were not involved in plumbing at the time of their accident.

Similarly, in *Covey v. Iroquois Gas Transmission System, L.P.*, 218 A.D.2d 197, 637 N.Y.S.2d 992 (3d Dep't 1996), the Third Department concluded that the plaintiff, who was responsible for lubrication and fluid maintenance on heavy equipment used in the construction of a pipeline and was injured while refilling hydraulic fluid into a backhoe used to dig the pipeline ditch, was protected by the statute. The court rejected the defendants' argument that the plaintiff's lubrication of heavy equipment was maintenance and not construction, finding that the plaintiff's employer "was engaged to construct a pipeline, and the maintenance work performed by plaintiff was an integral and necessary part of the construction." *Id.* at

198, 637 N.Y.S.2d at 993. The court held that § 240(1) applied "despite the fact that the particular job being performed at the moment plaintiff was injured did not in and of itself constitute construction." *Id.* at 199, 637 N.Y.S.2d at 993.

Most recently, in *O'Connor v. Lincoln Metrocenter Partners, L.P.*, 266 A.D.2d 60, 698 N.Y.S.2d 632 (1st Dep't 1999), the First Department concluded that the plaintiff, who fell through an opening in the plywood flooring on the nineteenth floor of a building at which he was working while en route to his assigned project on the twenty-fourth floor, came within the protection of the statute. The court reasoned that he "was clearly acting at the direction of his employer, and was present at the construction site as a person employed in the erection of a building or structure within the contemplation of Labor Law § 240(1)." *Id.* at 61, 698 N.Y.S.2d at 634.

Moreover, a New York Court of Appeals decision subsequent to *Joblon* may also imply that *Joblon* should not be read to preclude courts from considering context where the injury occurs while the employee is inspecting a construction site. In *Martinez v. City of New York*, 93 N.Y.2d 322, 712 N.E.2d 689, 690 N.Y.S.2d 524 (1999), the Court of Appeals held that an environmental inspector who fell while performing asbestos inspections was not protected by § 240(1). *Id.* at 326, 712 N.E.2d at 692, 690 N.Y.S.2d at 527. The inspector's employer had been hired to identify asbestos in New York City public schools, after which a different agency was to remove the identified asbestos. *Id.* at 324, 712 N.E.2d at 690, 690 N.Y.S.2d at 525–26. In determining whether the work was protected by the statute, the Court concluded that the inspections were too distinct from the project of removing asbestos to be considered part of that larger project. The Court characterized the in-

spector's work as "merely investigatory" because it would "terminate prior to the actual commencement of any subsequent asbestos removal work." *Id.* at 326, 712 N.E.2d at 691–92, 690 N.Y.S.2d at 527. No such work "was underway, and any future repair work would not even be conducted by … plaintiff's supervisor, but by some other entity." *Id.*

It is, perhaps, significant that the *Martinez* Court did not limit its consideration of the nature of the work to the time of injury, as the language in *Joblon* might suggest. But while the Court considered whether construction work was already underway and by whom it was to be performed, it rejected the analysis suggested by the Appellate Division, which had framed the inquiry as whether the inspections were "an integral and necessary" part of the larger project. *Id.* at 326, 712 N.E.2d at 692, 690 N.Y.S.2d at 527; *accord Adair v. Bestek Lighting & Staging Corp.,* 298 A.D.2d 153, 748 N.Y.S.2d 362, 363 (1st Dep't 2002) (concluding that a stagehand was not protected by the statute when she fell while adjusting overhead lights, even though her work might have been integral or necessary to the construction of the stage) (citing *Martinez,* 93 N.Y.2d at 326, 712 N.E.2d at 692, 690 N.Y.S.2d at 527). *Martinez* suggests that some questions regarding the context in which work that leads to injury was performed may be appropriate in a § 240(1) analysis, although it remains unclear what those questions might be.

At least when the work being performed at the time of injury is inspection, the Appellate Division has considered whether the inspections were part of the overall construction project in determining whether workers performing them are protected by the statute. Most recently, in *Campisi v. Epos Contracting Corp.,* 299 A.D.2d 4, 747 N.Y.S.2d 218 (1st Dep't 2002), the

First Department held that the inspector of a construction project who was injured while performing his supervisory duties was protected. The court concluded that the inspector "performed work that was 'part of' the construction project." *Id.* 747 N.Y.S.2d at 221. In *Aubrecht v. Acme Electric Corp.,* 262 A.D.2d 994, 692 N.Y.S.2d 544 (4th Dep't 1999), the Fourth Department held that § 240(1) protected an architect who was injured while inspecting a construction site. *Id.* at 994, 692 N.Y.S.2d at 545. Citing *Martinez,* the court explained that the architect's inspection "was essential to the construction of a building or structure and he was employed by an entity hired by the owner for such purpose." *Id.; see also Reisch v. Amadori Constr. Co.,* 273 A.D.2d 855, 856, 709 N.Y.S.2d 726, 728 (4th Dep't 2000) (engineer's inspection held protected by statute where his employer was charged with building a bridge and where the inspection was essential to the bridge's construction).

If these Appellate Division decisions are correct, in the case at bar Prats's inspection of work already done on the units would, we think, be protected by the statute. The inspections were part of the overall project of repairing and rehabilitating the air handling units that Prats's employer, AWL, was hired to do. Prats himself had worked, and in all likelihood would have continued to work, on replacing units and rebuilding walls. The inspections, performed while the actual repairing and rehabilitating continued, were necessary to complete the project.

Our analysis of the New York court decisions, however, does not indicate how the New York Court of Appeals would rule on this issue. Where "unsettled and significant question[s] of state law … will control the outcome of a case," 2d Cir. R. 0.27, we may certify those questions to the

New York Court of Appeals. We do so in this case.

## CONCLUSION

We hereby respectfully certify to the New York Court of Appeals the following question: In what circumstances, if any, are workers engaged in inspections of construction work that are part of an overall construction project protected by New York Labor Law § 240(1)?

In formulating the question as we have here, we do not mean to limit the Court of Appeals' response. The certified question may be deemed expanded to cover any pertinent further issue that the Court of Appeals thinks it appropriate to address.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. The parties are directed to bear equally such fees and costs as may be directed by the New York Court of Appeals.

This panel retains jurisdiction so that after we receive a response from the New York Court of Appeals, we may dispose of the appeal.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to New York Court of Appeals Rule 500.17, and United States Court of Appeals for the Second Circuit Rule 0.27.