This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 35
Joseph Saint et al.,
          Appellants,
        v.
Syracuse Supply Company,
          Respondent.

          Timothy M. Hudson, for appellants.
          Brian P. Crosby, for respondent.
          Defense Association of New York, Inc.; New York State
Trial Lawyers' Association, <u>amici</u> <u>curiae</u>.

RIVERA, J.:

          Plaintiffs Joseph Saint and his wife Sheila Saint

challenge the dismissal of their claims arising from work-related

injuries Joseph Saint suffered while he was engaged in the

- 1 -

installation and removal of a billboard advertisement.  We conclude that because plaintiff's work required the attachment, at an elevated height, of custom-made wooden extensions that changed the dimensions of the billboard frame, plaintiff was engaged in alteration of the structure within the meaning of Labor Law § 240 (1).  Moreover, he properly asserted claims for unprotected construction work under Labor Law §§ 240 (2) and 241 (6) based on the lack of a guardrail on the billboard platform. Therefore, we reverse the dismissal of his complaint.

According to the undisputed facts, on the day of his injury plaintiff Joseph Saint was part of a three-person construction crew working to replace an advertisement on a billboard located in Erie County.  The billboard is elevated approximately 59 feet from the ground, and composed of a two-sided metal frame constructed in an inverted "V" shape, facing east and west, and set on a metal tube embedded in the ground. Each side of the metal frame is approximately 14 by 48 feet in size, and covered by a series of panels which are secured to the frame by iron clips called "stringers."  Each side accommodates an advertisement made of vinyl material which is attached to the panels with ratchet straps.

The billboard has six catwalks used by workers when removing and installing advertisements.  Two catwalks are located on the exterior, one on each side of the metal frame.  The other four catwalks are located on the interior of the V frame, with a lower and upper catwalk on each side, set ten feet apart

vertically. Workers access the upper and lower catwalks by a ladder elevated several feet from the ground and attached externally to the metal tube. All the catwalks have safety cables, but only the lower rear catwalks have a guardrail.

Plaintiff and the other members of the construction crew were working on the installation of a new advertisement which necessitated the attachment of additions to the existing frame. These additions are referred to as "extensions," and are plywood cutouts shaped to accommodate the advertisement's artwork in cases where text or a picture exceeds the boundaries of the billboard's frame. For example, if the advertisement included a person with a raised arm and the arm extends past the edge of the top or the sides of the billboard, an extension shaped like an arm would be crafted from plywood and the advertisement vinyl would be glued to the extension to support the picture of the arm. Once the artwork is attached an angle iron is bolted to the back of the extension, and the extension is attached directly to the billboard frame with nails, nuts and bolts.

Plaintiff was working with the other crew members on an advertisement which required the attachment of four extensions. The extensions had been constructed in advance and transported to the billboard structure the day plaintiff was injured. During the course of their work, plaintiff and the construction crew used a crane operated by the plaintiff to raise the extensions along the outer side of the structure and onto the billboard's lower outer catwalk. The billboard frame did not contain

existing extensions that required removal, so once the new advertisement's extensions were hoisted onto the catwalk the crew proceeded directly to the removal of the old advertisement vinyl. The job required that the crew move the old advertisement from one side of the frame to the other. Thus, the crew detached the advertisement vinyl from the panels facing the west side, and threw it down to the ground. They then began the process of moving the vinyl from the east-side facing panels in order to pull it up, around, and over the metal frame so that it fell onto the panels facing towards the west, where the vinyl would then be attached to the frame. The crew members were at different locations on the upper and lower catwalks as they worked on removing the old vinyl.

Had the job gone without disruption, after the crew removed the old vinyl they would slide metal rods into pockets around the perimeter of the new vinyl advertisement and then use ratchet straps to secure the new advertisement to the panels. The crew would then bolt the extensions' angle irons to the stringers, to hold the extensions in place on the billboard frame. However, plaintiff fell and was injured while the crew was attempting to move the vinyl from the east side panels over the top of the frame and onto the west side panels.

Plaintiff was on the lower rear catwalk when he heard the other crew members call for assistance because they were having difficulty due to the day's wind conditions. Plaintiff went to the upper catwalk to assist them, and in order to get

around one of the crew members, plaintiff detached his lanyard from the catwalk's safety cable.  Before he was able to reattach the lanyard, a strong wind gust caused the vinyl to strike plaintiff in the chest, knocking him ten feet below onto the lower rear catwalk, where he landed with his back on an I-beam, and his shoulder on the metal catwalk.  As a result, plaintiff suffered a dislocated right shoulder and several herniated discs in his back, precluding him from engaging in work on billboards.  Plaintiff was subsequently terminated from his employment.

Plaintiffs sued defendant Syracuse Supply Company, LLC, owner of the property where the billboard is located, alleging violations of Labor Law §§ 240(1), 240(2) and 241(6), and derivative claims for plaintiff Sheila Saint's loss of support, consortium, and expenses related to Joseph Saint's medical bills.[1]  Defendant moved for summary judgment to dismiss plaintiffs' amended complaint in its entirety, asserting that plaintiff Joseph Saint was not engaged in a covered activity under the Labor Law.  Plaintiffs cross moved for partial summary judgment on their Labor Law §§ 240(1) and 241(6) claims.  Supreme Court denied both motions, concluding that Labor Law §§ 240 and 241 applied to plaintiffs' claims and that an issue of fact existed as to whether plaintiff was the sole proximate cause of his injuries for failure to reconnect his lanyard.  Only

[1]Plaintiffs also asserted claims under Labor Law § 200 and common law negligence, but during the course of the proceedings conceded these claims were not viable.  Plaintiffs also filed an amended complaint naming several additional defendants, but later withdrew those claims.

- 5 -

defendant appealed the order.

The Appellate Division reversed and granted summary judgment for defendant and dismissed the amended complaint (Saint v Syracuse Supply Co., 110 AD3d 1470 [4th Dept 2013]).  Relying in part on this Court's decisions in Joblon v Solow (91 NY2d 457 [1998]) and Munoz v DJZ Realty (5 NY3d 747 [2005]), the Appellate Division concluded that plaintiff's work on the billboard did not constitute altering the building or structure for purposes of Labor Law § 240, and instead was "more akin to cosmetic maintenance or decorative modification" (Saint, 110 AD3d at 1471).  The court also concluded plaintiff was not engaged in construction work within the meaning of § 241 (6) (id.).  We granted plaintiffs leave to appeal (22 NY3d 866 [2014]), and now reverse.

Labor Law section 240 (1) provides,

"All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The "purpose of the statute is to protect workers by placing ultimate responsibility for safety practices on owners and contractors instead of on workers themselves" (Panek v County of Albany, 99 NY2d 452, 457 [2003], citing Martinez v City of New

- 6 -

York, 93 NY2d 322, 325-326 [1999], and Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985]).  To that end, section 240(1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (Panek, 99 NY2d at 457, citing Gordon v Eastern Ry. Supply, Inc., 82 NY2d 555, 559 [1993]).  Therefore, the Court has made clear that section 240 (1) imposes on owners or general contractors and their agents a nondelegable duty, and absolute liability for injuries proximately caused by the failure to provide appropriate safety devices to workers who are subject to elevation-related risks (see Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]).

Plaintiff claims that he comes within the coverage of section 240 (1) because he physically altered the billboard by installing extensions that changed the physical shape of the structure.  Defendant responds that plaintiff's injuries are outside the scope of the Labor Law because at the time of plaintiff's fall he was not engaged in the installation or removal of extensions.  In any event, according to defendant, plaintiff's work was not an alteration because changing the vinyl advertisement is a routine maintenance activity, and any alleged change to the structure was not permanent in nature.

In determining whether plaintiff Joseph Saint was engaged in the type of work covered by the section 240(1), we first consider defendant's contention that we should limit our analysis of plaintiff's activity to the moment of his injury.

- 7 -

The Court previously rejected this narrow construction of the statute's application in Prats v Port Authority, because "it is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work" (100 NY2d 878, 882 [2003]).  Thus, in Prats the Court considered the totality of the plaintiff's actions, noting that he was part of the team working on an enumerated activity and on previous days he had done heavier alteration work for the same project at the same work site where he was injured (id. at 881).  Based on the context of that work and because the "intent of the statute [is] to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts" (id. at 882), the Court concluded that the plaintiff was engaged in alteration and thus covered under section 240 (1).

Defendant's interpretation would compartmentalize a plaintiff's activity and exclude from the statute's coverage preparatory work essential to the enumerated act.  This construction of the Labor Law is exactly what the Court sought to avoid by Prats's contextualized analysis, and would strip workers of the "exceptional protection that section 240 (1) provides" (Rocovich, 78 NY2d at 514).  We therefore reject an interpretation unsupported by the case law and which does no more than undermine the statutory purpose of protecting workers from dangers inherent to tasks involving elevation differentials (see e.g. Robinson v City of New York, 22 AD3d 293, 293-94 [1st Dept 2005]; Fitzpatrick v State, 25 AD3d 755, 757 [2d Dept 2006];

- 8 -

<u>Randall v Time Warner Cable, Inc.</u>, 81 AD3d 1149, 1151 [3d Dept 2011]).

Applying this standard, we conclude that plaintiff was engaged in work that constitutes an alteration within the meaning of the statute.  In reaching this determination we apply the definition the Court adopted in <u>Joblon</u>, that the term "altering" in section 240 (1) "requires making a <u>significant</u> physical change to the configuration or composition of the building or structure" (<u>Joblon</u>, 91 NY2d at 465).  This definition excludes "routine maintenance" and "decorative modifications" (<u>id.</u>).  Whether a physical change is significant depends on its effect on the physical structure.  Thus, the Court held that the plaintiff in <u>Joblon</u> who was injured when he fell off a ladder while in the process of chiseling a hole through a concrete block wall so that he could run electrical wires from one room to another to install a wall clock was engaged in "altering" under section 240 (1).  As the Court held, extending the wiring and chiseling a hole through the concrete constituted a significant change and entailed "more than a simple, routine activity" (<u>id.</u> at 465-66).

Here, plaintiff's job was to install a new advertisement.  In order to do so he and the other members of the construction crew had to attach extensions that changed the dimensions of the billboard's frame and transformed the shape of the billboard to accommodate the advertisement's artwork.  Plaintiff was injured when in furtherance of this task he fell while assisting the other crew members with the removal of the

old vinyl advertisement from the billboard's side panels.  The vinyl removal was a prerequisite to the attachment of the extensions and therefore an integral part of the installation of the extensions.  We have little difficulty concluding that the plaintiff's work entails a significant change to the billboard structure because once the vinyl is removed, the billboard is enlarged by the attachment of the extensions, work accomplished by the use of the angle iron on the back of each extension, and application of nuts, bolts and nails.

Moreover, plaintiff's facts differ from those of prior cases where the Court found the injured worker's activity constituted routine maintenance, and thus was outside the coverage of the statute.  Those cases involved simple tasks, involving minimal work.  In comparison, the removal of an old advertisement and the installation of vinyl-covered plywood extensions for the purpose of enlarging the shape of the billboard to accommodate the new advertisement's artwork involves the type of physical change significant enough to constitute a section 240 (1) alteration, and to distinguish plaintiff's work from routine maintenance illustrated by the changing of a lightbulb, as in the case of Smith v Shell Oil Co. (85 NY2d 1000, 1002 [1995]), the replacement of air conditioning components damaged in the course of normal wear and tear, as in Esposito v New York City Indus. Dev. Agency (1 NY3d 526, 528 [2003]), household window cleaning, like that involved in Brown v Christopher St. Owners Corp. (87 NY2d 938, 939 [1996]), or the

- 10 -

routine, annual inspection of an elevator in <u>Nagel v D & R Realty Corp.</u> (99 NY2d 98, 99 [2002]).

Nor, on the facts of this case, is the installation of the new advertisement a "decorative modification" because the work here entails far more than a mere "change to the outward appearance of the billboard" (<u>Munoz</u>, 5 NY3d at 748). Instead, the job requires a change to the billboard's size and an adjustment of the frame to accommodate the unique shape of the advertisement. Moreover, any change to the billboard frame ensures that a future installation of a new advertisement would require a subsequent alteration of the billboard's structure. That is to say, if the new advertisement did not require extensions then the existing extensions would be removed and the frame left as is, or if the new advertisement required different extensions the old ones would be removed and the new ones installed. In either case, the billboard frame would be different from the one plaintiff would have altered.

Although plaintiff's job title is irrelevant to our analysis because we must focus on the actual work in which he was engaged (<u>Joblon</u>, 91 NY2d at 465-66), we note that plaintiff's activities bear out his designation as a construction crew member, and further support our conclusion that he was employed in the type of work covered by section 240 (1). Plaintiff operated the crane used to hoist the extensions. The installation of the new advertisement involved heavy lifting, and the attachment of wood and vinyl to a metal frame several feet

- 11 -

above the ground.

We are unpersuaded by defendant's argument that Munoz v DJZ Realty, where the Court concluded that an employee injured while working on a billboard was not involved in "alteration" for purposes of section 240(1), is dispositive of plaintiff's case. In Munoz, the plaintiff was applying pre-pasted sheets to a billboard which the Court concluded merely "changed the outward appearance of the billboard, but did not change the billboard's structure" (Munoz, 5 NY3d at 748). Notably, the Munoz plaintiff denied any assertion that the plastering constituted a change in the shape of the billboard (see Munoz v DJZ Realty, Pls'Brf at 16, n 9).[2] Unlike the plaintiff in Munoz, plaintiff and his fellow crew members could not attach the new advertisement -- the step that involved changing the outward appearance of the billboard -- without first changing the size of the billboard to accommodate the vinyl for the new, larger advertisement. Far from the "cosmetic maintenance or decorative modification" that doomed the Munoz plaintiff's claim, plaintiff's activity required attachment of metal bolts, and the eventual attachment of the extension to the billboard frame itself.

Similarly unpersuasive is defendant's argument that plaintiff's work is not an alteration within the meaning of section 240 (1) because the statute applies only to permanent

_____

[2]The plaintiff in Munoz claimed instead that by placing an advertisement on the face of the billboard, the plaintiff "altered" the composition of the billboard structure in a manner consistent with our holding in Joblon (Munoz v DJZ Realty, Pls' Brf at 16).

- 12 -

changes.  There is no support in the text or the case law for this limit on the statute's reach.  No where does section 240 (1) impose or even mention a requirement that an alteration be of a permanent and fixed nature (see Labor Law § 241 [1]).  Such a reading is at odds with the Court's prior decisions.  For example, in Panek, the alteration was to a building scheduled for demolition, a fact the Court said "does not change the nature of the work project at the time of [the plaintiff's] accident" (Panek, 99 NY2d at 458, citing Joblon, 91 NY2d at 464).  In Joblon, the wall clock could have been removed, the wiring pulled out, and the chiseled hole refilled.  Nevertheless, the Court concluded that "the work performed by Joblon was a significant physical change to the configuration or composition of the building" (Joblon, 91 NY2d at 465).  In Weininger v Hagedorn & Co., the Court held that installing computer and telephone cables was an alteration within the meaning of section 240 (1)(91 NY2d 958 [1998], citing Joblon, 91 NY2d at 465).  Yet, the computer and telephone cables could have been removed and the ceiling repaired.  Similarly, in this case the fact that the advertisement extensions stay up as long as the sign does, makes the work no less an alteration within the meaning of section 240 (1).  The change to the physical attributes of the structure is what matters.

A requirement that the alteration be permanent would also undermine the worker protection purpose of the statute (see Rocovich, 78 NY2d at 513).  Regardless of the duration of the

- 13 -

completed work, the worker's task remains the same, and the permanency of the alteration in no way diminishes the risk attendant to that task.

Given the nature of the plaintiff's work on the day of his injury and that the attachment of extensions to the billboard affects a significant change to the structure, plaintiff was engaged in work that constitutes "altering" within the meaning of Labor Law § 240 (1). Dismissal of his claim pursuant to this section was therefore error.

We also find that it was error to dismiss plaintiff's other Labor Law claims. Turning to his section 240(2) claim, this provision requires, in relevant part, that "[s]caffolding or staging more than twenty feet from the ground or floor . . . shall have a safety rail of suitable material properly attached, bolted, braced or otherwise secured . . .." It is undisputed that the billboard platform was 59 feet above the ground and that there was no safety railing surrounding the upper rear catwalk from which plaintiff fell. Therefore, plaintiff alleged a viable claim under section 240 (2), and its dismissal was error.

With respect to plaintiff's section 241 (6) claim, we agree with plaintiff that he was engaged in "construction work" and thus within the ambit of the statute. Pursuant to section 241(6), "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the

- 14 -

persons employed therein or lawfully frequenting such places." In determining what constitutes "construction" for purposes of the statute we look to the Industrial Code which, as relevant here, defines construction to include alteration of a structure (12 NYCRR 23-1.4 [b] [13]). Since plaintiff was altering the billboard by installing the extension at the time of his injury, his claim comes within section 241 (6).

The defendant and Appellate Division's reliance on Hatfield v Bridgedale, LLC (28 AD3d 608 [2d Dept 2006]), in support of the opposite conclusion is misplaced. In Hatfield, the Appellate Division affirmed the dismissal of plaintiff's section 241(6) claim holding that the section "do[es] not apply to claims arising out of maintenance of a building or structure outside of the construction context" (id. at 610). However, unlike the plaintiff in Hatfield, for the reasons we have already discussed, plaintiff here was altering the billboard's dimensions in order to apply the advertisement, and thus was not engaged in maintenance work.

Accordingly, the Appellate Division order should be reversed, with costs, and defendant's motion for summary judgment denied.

* * * * * * * * * * * * * * * * *

Order reversed, with costs, and defendant's motion for summary judgment denied. Opinion by Judge Rivera. Chief Judge Lippman and Judges Read, Pigott, Abdus-Salaam, Stein and Fahey concur.

Decided April 2, 2015

- 15 -