# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 94
Mark A. Stoneham et al.
    Appellants,
      v.
Joseph Barsuk, Inc., et al.
    Defendants,
David J. Barsuk,
    Respondent.

John N. Lipsitz, for appellants.
James M. Specyal, for respondent.

SINGAS, J.:

Plaintiff Mark A. Stoneham was lying beneath a lifted trailer working on a faulty air brake system when the trailer fell on him causing serious injuries. The issue is whether plaintiff was engaged in an activity protected by Labor Law § 240 (1). We hold that the

- 1 -

statute was not intended to cover ordinary vehicle repair and, thus, the courts below correctly dismissed the section 240 (1) cause of action as to defendant David J. Barsuk.

I.

Plaintiff is a certified diesel technician who has experience working on heavy equipment, including dump trucks, loaders, dozers, and trailers. Defendant owned a commercial trailer, which could haul heavy equipment weighing up to 20 tons. After defendant noticed a problem with the trailer's air brake system, plaintiff agreed to replace a leaking air tank and four air hoses located underneath the trailer. In August 2018, plaintiff used a front loader, equipped with a bucket attachment, to lift the trailer about 5½ feet above the ground and then engaged the front loader's parking brake.[*] As plaintiff was lying under the trailer installing the new air brake equipment, the front loader rolled backwards and the trailer fell on him, pinning him underneath. Plaintiff suffered severe injuries.

Plaintiff, and his wife suing derivatively, commenced this action against defendant and others, alleging a Labor Law § 240 (1) cause of action and three additional claims. Plaintiffs moved for summary judgment as to liability against defendant on the section 240 (1) claim, arguing that defendant failed to provide plaintiff with adequate safety devices. Defendant cross-moved for summary judgment dismissing the section 240 (1)

---

[*] Plaintiff alleges that defendant Joseph Barsuk, Inc. owned the front loader. This appeal stems from plaintiff's motion for summary judgment against defendant, who is a principal of Joseph Barsuk, Inc., and defendant's cross-motions for summary judgment.

cause of action as to him. Supreme Court denied plaintiffs' motion and granted defendant's cross-motions.

The Appellate Division affirmed, with two Justices dissenting (*see* 210 AD3d 1479, 1479 [4th Dept 2022]). Considering Labor Law § 240 (1)'s purpose and its text "as a whole," the Court held that "the vehicle repair work at issue here" was not "a protected activity within the meaning of" the statute (*id.* at 1480, 1481). The dissenters, by contrast, determined that "under the unique circumstances of this case," they were unable to "conclude that plaintiff was not engaged in a protected activity as a matter of law" (*id.* at 1482 [Winslow and Bannister, JJ., dissenting]).

The Appellate Division granted plaintiffs leave to appeal to this Court and certified a question asking whether its order was properly made (*see* 213 AD3d 1284 [4th Dept 2023]). We answer the question in the affirmative.

## II.

Labor Law § 240 (1) applies to workers "employed" in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (*see Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521, 524-525 [2012]). The statute's "central concern is the dangers that beset workers in the construction industry" (*id.* at 525). If an employee is engaged in an activity covered by section 240 (1), "contractors and owners" must "furnish or erect" enumerated safety devices "to give proper protection" to the employee. "Whether a plaintiff is entitled to recovery under [section] 240 (1) requires a determination of whether the injury sustained is the type of elevation-related hazard to which the statute applies" (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 7

[2011]).  To make this determination, a court must examine the "type of work the plaintiff was performing at the time of injury" (*Joblon v Solow*, 91 NY2d 457, 465 [1998]).

Section 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed" (*Nicometi v Vineyards of Fredonia, LLC*, 25 NY3d 90, 101 [2015] [internal quotation marks omitted]).  However, "the statutory language must not be strained in order to encompass what the [l]egislature did not intend to include" (*Martinez v City of New York*, 93 NY2d 322, 326 [1999] [internal quotation marks omitted]; *see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 292 [2003]).  The statute "should be construed with a commonsense approach to the realities of the workplace at issue" (*Nicometi*, 25 NY3d at 101 [internal quotation marks omitted]).

While we have "rejected the idea that Labor Law § 240 (1) applies only to work performed on construction sites" (*Dahar*, 18 NY3d at 525; *see Joblon*, 91 NY2d at 464), we have limited the statute's reach when necessary to align with the statutory text and legislative intent (*see e.g. Soto v J. Crew Inc.*, 21 NY3d 562, 564, 568 [2013] [rejecting the "plaintiff's argument that the legislature intended to cover all cleaning that occurs in a commercial setting" even though the plaintiff fell from a ladder "while dusting a . . . display shelf"]; *Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46, 53 [2004] [concluding that routine maintenance of a malfunctioning cable box is not covered under the statute even though plaintiff fell from a 20-foot ladder while working on the box]; *Martinez*, 93 NY2d at 324 [section 240 (1) did not apply when the plaintiff "was injured when he fell from a height while performing asbestos inspection work"]; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 489 [1995] ["the collapse of (a) fire wall" onto a worker "is . . . not an elevation-

related risk subject to the safeguards prescribed by Labor Law § 240 (1)"]).  Thus, contrary to the dissent's suggestion, Labor Law § 240 (1) does not apply every time an employee is injured as "the result of an elevation differential" (dissenting op at 5).  "[A]n accident alone does not establish a Labor Law § 240 (1) violation" (*Abbatiello*, 3 NY3d at 50).

We have held that work completed "during the normal manufacturing process" is not "protected under Labor Law § 240 (1)" (*Jock v Fien*, 80 NY2d 965, 968 [1992]; *see Preston v APCH, Inc.*, 34 NY3d 1136, 1137 [2020]).  *Dahar* is instructive in this regard. The plaintiff there "was injured when he fell from a ladder in a factory while cleaning a product manufactured by his employer" (18 NY3d at 523).  The product was a seven-foot-high wall module, which was to be transported and attached to a building at a different location.  Falling from a ladder obviously was "an elevation-related risk" of the plaintiff's employment (dissenting op at 4).  Despite that elevation differential, we held that the plaintiff's activity "was not protected by Labor Law § 240 (1)" because we had never "extend[ed] the statute to reach a factory employee engaged in cleaning a manufactured product" (*Dahar*, 18 NY3d at 523, 525).

The plaintiff in *Dahar* understood his claim differently than the dissent, arguing that he was entitled to protection under section 240 (1) because he was "cleaning" a "structure" (*compare* dissenting op at 5-6).  Here, plaintiff similarly maintains that the trailer "was a 'structure' under the broad definition" that we have adopted for that term, and that he was repairing that structure (*Dahar*, 18 NY3d at 525).  But "[t]he breadth of the statute's protection has . . . been construed to be less wide than its text would indicate" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]; *see Dahar*, 18 NY3d at 526 ["we

have not extended the statute's coverage to every activity that might fit within its literal terms"]). As in *Dahar*, plaintiff's "argument is too simple, and would lead to an expansion of section 240 (1) liability that our cases do not support and that we are convinced the [l]egislature never intended" (18 NY3d at 525). Indeed, plaintiff essentially asks us to ignore the statute's context and, instead, focus exclusively on the definition of "structure," one word in section 240 (1).

Employing a holistic view of the statute, we conclude that the activity in which plaintiff was engaged, ordinary vehicle repair, is not an activity covered by Labor Law § 240 (1). Such work is analogous to that of a factory worker engaged in the normal manufacturing process. Plaintiff is a mechanic who was fixing the brakes on a trailer, a "[v]ehicle" as that term is defined in Vehicle and Traffic Law § 159. Expanding the statute's scope to cover a mechanic engaged in ordinary vehicle repair would "extend the statute . . . far beyond the purposes it was designed to serve" (*Dahar*, 18 NY3d at 526).

Further, if the statute applied in this case, car owners would be absolutely liable for gravity-related injuries that occurred when a mechanic was working on their car. This would be an enormous expansion of liability under Labor Law § 240 (1), and one that was not envisioned by the legislature. Indeed, this state's section 240 (1) jurisprudence is devoid of cases in which a mechanic recovered under the statute for an injury suffered while engaged in ordinary vehicle repair. "Such injuries can hardly be uncommon; we infer that it has been generally—and correctly—understood that the statute does not apply to them" (*id.*). We decline to strain the statute's reach to encompass what the legislature did not intend to include.

This case involves a horrific incident that caused plaintiff grievous injuries. However, plaintiff was engaged in ordinary vehicle repair, which is not a protected activity under Labor Law § 240 (1). Accordingly, the Appellate Division order should be affirmed, with costs, and the certified question answered in the affirmative.

CANNATARO, J. (dissenting):

The majority today holds that the legislature did not intend for Labor Law § 240 (1) to apply to "ordinary vehicle repair." However, this Court has previously interpreted Labor Law § 240 (1) as covering cases where a "plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]), which I believe encompasses the work plaintiff was performing here. Because the majority has not provided any authority for its novel view that the

legislature did not intend "ordinary vehicle repair" to qualify as a protected activity, I respectfully dissent.

## I.

At the time of the accident, plaintiff was performing repairs on a commercial trailer.[1] The trailer was hoisted about five-and-a-half feet off the ground by means of the bucket attachment of a front loader that plaintiff had used to access the underside of the trailer. While plaintiff was working underneath the trailer, the front loader rolled backwards releasing the trailer, which fell onto plaintiff, causing him severe injuries.

Labor Law § 240 (1) requires owners, contractors and their agents to provide appropriate protective equipment to workers engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure." This Court has repeatedly instructed that Labor Law § 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001] [quotation marks and citations omitted]; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]; *Koenig v Patrick Constr. Corp.*, 298 NY 313, 319 [1948]). As we have explained, the "purpose" for which Labor Law § 240 (1) was framed was to protect against the dangers of "elevation-related hazards in the workplace" (*Joblon v Solow*, 91 NY2d 457, 462 [1998]) more specifically, the "protection of persons in gaining access to or working at sites where elevation poses a risk" and protection of workers in "lifting or securing loads and materials employed in the work"

---

[1] It is undisputed that plaintiff was not working on a car, or any type of motor vehicle when he was injured.

(*Rocovich*, 78 NY2d at 513-514). And although we have in the past observed that the statute's "central concern is the dangers that beset workers in the construction industry" (*Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521, 525 [2012]) we have also repeatedly "rejected the idea that Labor Law § 240 (1) applies only to work performed on construction sites" (*id.*; *Joblon*, 91 NY2d at 466).

As the majority correctly concludes, it is not the nature of the structure, but rather the nature of the work that determines whether section 240(1) properly applies. Indeed, in 1909, this Court held that a structure "in its broadest sense includes any production or piece of work artificially built up or composed of parts joined together in some definite manner" (*Caddy v Interborough R. T. Co.*, 195 NY 415, 420 [1909] ).[2]

We have likewise recognized that "a violation of the statute cannot establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury" (*Rocovich*, 78 NY2d at 513 [internal quotation marks omitted]). In other words, simply because a worker is injured due to a lack of safety equipment while erecting, demolishing, repairing, altering, painting, cleaning, or pointing a building or structure does not necessarily invoke the protections of section 240 (1). The injury must have been caused by a type of hazard contemplated by the statute. To determine what types of hazards are protected we look to the specific safety devices enumerated in the statute (*id.* at 513-514). For instance, "scaffolding" and "ladders" seek to protect workers who are gaining access to sites where elevation poses a risk and

---

[2] *Caddy* was interpreting a precursor statute to Labor Law § 240 (1) (L 1897, ch 415).

"[h]oists, blocks, braces, irons, and stays" are used to safely lift and secure loads and materials to ensure that they do not injure workers in gravity-related falls (*id*. [internal quotation marks omitted]).

We have repeatedly held that the statute is intended to protect workers engaged in employment where there is an elevation-related risk. *Rocovich*, for example, interpreted the purpose of section 240 (1) as seeking to alleviate the "significant risk inherent in [a] particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured" (*id*. at 514).

In *Narducci,* we further explained that:

> "Labor Law § 240(1) applies to both falling worker and falling object cases. With respect to falling objects, Labor Law § 240 (1) applies where the falling of an object is related to a significant risk inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured. Thus, for section 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, *because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" 96 NY2d at 267-268 [internal quotation marks and citations omitted]).

Finally, in *Runner*, we held that the dispositive question in Labor Law § 240 (1) cases is "whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (13 NY3d at 603).

Based on the foregoing, there is at least a question of fact in this case as to whether the protections of Labor Law § 240 (1) are available because plaintiff suffered an injury due to a "significant elevation differential" which could have been avoided by the provision

of appropriate safety equipment. Both plaintiff and his expert witness opined that the incident would not have happened had plaintiff been provided with proper blocks to secure the wheels of the front loader, and that the materials available at the worksite on the day of the accident were insufficient for that purpose. Thus, plaintiff's injury, the result of an elevation differential between him and the structure he was repairing, could potentially have been prevented through use of an enumerated piece of safety equipment specified in Labor Law § 240 (1).

II.

The majority reads between the lines of this Court's precedents to create an exception from the protections of section 240 (1) for "ordinary vehicle repair," reasoning that such activity is outside the scope of the statute's purpose. In so doing, it ignores a significant body of caselaw analyzing section 240 (1) developed over the past century.

Recognizing that this Court has "rejected the idea that Labor Law § 240 (1) applies only to work on construction sites," the majority asserts that "we have limited the statute's reach when necessary to align with the statutory text and legislative intent" (majority op at 4 [internal quotation marks omitted]). In support of this conclusion, the majority cites to cases excluding manufacturing and routine maintenance from the protections of section 240 (1) (*see e.g. Preston v APCH, Inc.*, 34 NY3d 1136, 1137 [2020]; *Soto v J. Crew Inc.*, 21 NY3d 562, 568 [2013]; *Dahar*, 18 NY3d at 526[3]; *Abbatiello v Lancaster Studio Assoc.*,

---

[3] Although the plaintiff in *Dahar* may have understood his claim as covered under Labor Law § 240 (1) because he was cleaning a structure, this Court found that it was more akin to manufacturing, a non-covered activity (18 NY3d at 526).

3 NY3d 46, 53 [2004]; *Martinez v City of New York*, 93 NY2d 322, 326 [1999]; *Jock v Fein*, 80 NY2d 965, 968 [1992]).  But those cases each dealt with injuries that "did not involve 'erection, demolition, *repairing*, altering, painting, cleaning or pointing' of a building or structure" and are thus not analogous to the case at bar (*Preston*, 34 NY3d at 1137 [emphasis added]).  In contrast, this case arguably deals with a repair, which would fit squarely within the activities the statute expressly sought to protect.[4]

Furthermore, despite the majority's assertion that applying section 240 (1) here would lead to an expansion of the statute beyond what the legislature intended, it does not point to any authority for its view of what legislature actually intended, other than analogizing the repair activity at issue to "a factory worker engaged in the normal manufacturing process"—a concededly unprotected activity (majority op at 6).  To get around this problem, the majority employs what it calls a "holistic view of the statute," concluding "that the activity in which the plaintiff was engaged, ordinary vehicle *repair*, is not an activity covered by Labor Law § 240 (1)" (majority op at 6 [emphasis added]).  But in my view, this conclusion runs contrary to the established test that this Court has developed for determining whether an activity is protected under the statute, whether the risk inherent in the work being performed was the product of an elevation differential that could have been prevented through the use of appropriate safety equipment (*Runner*, 13 NY3d at 603).  Because I think the answer to that question is yes, and because unsupported

---

[4] The Fourth Department assumed without deciding that the work done by plaintiff was a repair and not "routine maintenance".

pronouncements regarding the intent of the 1921 legislature are insufficient to overcome

more than a century of precedent, I respectfully dissent.


Order affirmed, with costs, and certified question answered in the affirmative.
Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Troutman and
Halligan concur. Judge Cannataro dissents in an opinion.

Decided December 19, 2023