■ THOMAS J. O'BRIEN, JR., Appellant, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Respondents, et al., Defendants. [16 NYS3d 533]—

Order, Supreme Court, New York County (Louis B. York, J.), entered July 16, 2013, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion and defendants the Port Authority of New York and New Jersey, Tishman Construction Corporation of New York and Atlantic Housing and Scaffolding, LLC's cross motion for summary judgment on plaintiff's Labor Law § 240 (1) claim, and granted plaintiff summary judgment on his Labor Law § 241 (6) claim insofar as predicated on a violation of Industrial Code (12 NYCRR) § 23-1.7 (d), modified, on the law, to grant plaintiff's motion for summary judgment on his section 240 (1) claim, and to deny plaintiff summary judgment on his section 241 (6) claim as predicated on a violation of 12 NYCRR 23-1.7 (d), and otherwise affirmed, without costs.

Plaintiff was working as an operating engineer at the World Trade Center Freedom Tower construction site, responsible for maintaining the welding machines on site. He slipped and fell down a steel staircase while he was attempting to walk down to the supply shanty.

Plaintiff is entitled to partial summary judgment on his Labor Law § 240 (1) claim. As the dissent recognizes, plaintiff was engaged in a covered activity at the time he slipped and fell down the stairs of a temporary tower scaffold. A fall down a temporary staircase is the type of elevation-related risk to which section 240 (1) applies, and the staircase, which had been erected to allow workers access to different levels of the worksite, is a safety device within the meaning of the statute (*see McGarry v CVP 1 LLC*, 55 AD3d 441 [1st Dept 2008]; *Wescott v Shear*, 161 AD2d 925 [3d Dept 1990], *appeal dismissed* 76 NY2d 846 [1990]). As we stated in *Ervin v Consolidated Edison of N.Y.* (93 AD3d 485, 485 [1st Dept 2012]), involving a worker who fell when the temporary structure he was descending gave way, "It is irrelevant whether the structure constituted a staircase, ramp, or passageway since it was a safety device that failed to afford him proper protection from a gravity-related risk." We are thus at a loss to comprehend the dissent's reasoning that although the temporary staircase was a safety device and although it admittedly did not prevent plaintiff's fall, there is nonetheless a factual issue which would defeat plaintiff's entitlement to partial summary judgment on his section 240 (1) claim.

The fact that the affidavits of plaintiff's and defendant's experts conflict as to the adequacy and safety of the temporary

stairs does not preclude summary judgment in plaintiff's favor. A plaintiff is entitled to partial summary judgment on a section 240 (1) claim where, as here, stairs prove inadequate to shield him against harm resulting from the force of gravity, and his injuries are at least in part attributable to the defendants' failure to take mandated safety measures to protect him against an elevation-related risk (*see Stallone v Plaza Constr. Corp.*, 95 AD3d 633 [1st Dept 2012]). Plaintiff's expert opined, inter alia, that the stairs showed obvious signs of longstanding use, wear and tear; therefore, a decrease in anti-slip properties was to be expected. Given that it is undisputed that the staircase, a safety device, malfunctioned or was inadequate to protect plaintiff against the risk of falling, plaintiff is entitled to summary judgment, whatever the weather conditions might have been.

The grant of summary judgment on plaintiff's section 241 (6) claim insofar as it was predicated on a violation of 12 NYCRR 23-1.7 (d) was also in error. Issues of fact exist concerning whether someone within the chain of the construction project had notice of the hazardous condition (*see Booth v Seven World Trade Co., L.P.*, 82 AD3d 499 [1st Dept 2011]).

We have considered the remaining arguments and find them unavailing. Concur—Renwick, Moskowitz, Richter and Manzanet-Daniels, JJ.

Friedman, J.P., dissents in part in a memorandum as follows: While I otherwise concur in the majority's disposition of the appeal, I respectfully dissent from its modification of the order appealed from to grant plaintiff summary judgment as to liability on his cause of action under Labor Law § 240 (1). Plaintiff, while working at an outdoor construction site, slipped and fell on a temporary steel staircase that was wet due to rain. The parties' conflicting expert affidavits raise a triable issue as to whether a staircase offering superior protection from slipping hazards could have been provided. If a factfinder determines that no better staircase could have been provided, there was no violation of Labor Law § 240 (1).

Plaintiff was an operating engineer at the World Trade Center Freedom Tower construction site, responsible for maintaining the welding machines on site. He slipped and fell down a temporary steel staircase while he was attempting to descend to the supply shanty to retrieve his raincoat. The construction site was outdoors and, at the time of the accident, the staircase was wet due to rain.

In my view, the motion court correctly determined that neither side was entitled to summary judgment on plaintiff's

Labor Law § 240 (1) cause of action. While the staircase in question was a safety device within the purview of section 240 (1), the record, including the conflicting expert affidavits concerning the adequacy of the staircase under prevailing safety standards, gives rise to a question of fact as to whether the accident arose from a violation of the statute (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 288-290 [2003]; *Ellerbe v Port Auth. of N.Y. & N.J.*, 91 AD3d 441, 442 [1st Dept 2012]). Contrary to the majority's implication, the Court of Appeals has made clear that "a fall from a scaffold or ladder, in and of itself, [does not] result[ ] in an award of damages to the injured party [under section 240 (1)]" (*Blake*, 1 NY3d at 288). Rather, to obtain summary judgment as to liability, a plaintiff suing under the statute "must establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall, because liability is contingent upon the failure to use, or the inadequacy of such a device" (*Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 340 [2011] [internal quotation marks and ellipsis omitted]).

While the availability of a safety device that could have prevented the injury will generally not be an issue in cases where the safety device "collapse[d] or malfunction[ed] for no apparent reason" (*Blake*, 1 NY3d at 289 n 8), this is not such a case. Rather, the staircase at issue here naturally became wet when it rained (as was inevitable at an outdoor construction site), and the record contains conflicting evidence as to whether the staircase could have been designed to be less slippery in rainy weather or, if adequately designed, was too worn down to provide the intended level of protection from slipping. If, as averred by the defense expert, the staircase met prevailing safety standards and had not become defective due to wear and tear, there was no violation of section 240 (1) on which to predicate liability. While a defendant that has violated the statute by failing to provide an adequate device cannot raise the plaintiff's own negligence as a defense, " 'there can be no liability under section 240 (1) when there is no violation and the worker's actions (here, his negligence) are the "sole proximate cause" of the accident' " (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004], quoting *Blake*, 1 NY3d at 290).

The majority ignores *Ortiz*, in which the Court of Appeals made clear that a claim under section 240 (1) does not lie where there is no available safety device that could have prevented the accident. That is precisely the question raised by the conflicting expert affidavits in this case, which differ over whether the subject staircase met prevailing safety standards.

If it did, as maintained by the defense expert, the conclusion would be that the accident happened, notwithstanding the provision of appropriate safety devices, because there is simply no way to eliminate all danger of slipping on a wet surface at an outdoor construction site. If the staircase was adequate and the sole cause of the accident was plaintiff's failure to use due care in descending it when it was unavoidably wet, as a jury could find on this record, there would be no basis for imposing liability upon defendants under section 240 (1). As broad as it is, section 240 (1) does not make owners and contractors insurers against risks that even the provision of the best equipment cannot entirely eliminate.

In granting plaintiff summary judgment on the section 240 (1) claim, the majority relies on the affidavit of plaintiff's expert, opining that the staircase was inadequate, and ignores the two affidavits of the defense expert, David H. Glabe, P.E., opining that the staircase met applicable safety standards and was in good condition at the time of the accident. I quote below portions of Mr. Glabe's affidavits to demonstrate that, at the very least, defendants have raised a triable issue as to the adequacy of the safety features and condition of the staircase, bearing in mind that the elimination of all conceivable risk is not a humanly attainable standard.

In his affidavit sworn to October 16, 2012, Mr. Glabe averred: "9. It is a known and accepted fact in the construction industry that much work and activity takes place outdoors and in times of inclement weather. The staircase involved in the alleged accident is designed for use in both indoor and outdoor settings. Based upon my training, knowledge and experience, the involved staircase is routinely used not only in commercial settings such as construction sites but also in industrial settings such as power plants, refineries and chemical plants. Given the forgoing, the manufacturer of the type of staircase used by the plaintiff, is fully aware that when used outside, it may be exposed to the elements. The evidence I have reviewed establishes that the staircase is designed and manufactured so as to provide traction acceptable within industry standards and practice in times of inclement weather.

"10. With regard to traction, the treads for the staircase meet with good and acceptable construction safety requirements in that they are manufactured with perforated holes and raised metal nubs. The perforated holes in the stairs serve the purpose of allowing water, rain and snow to pass through them. The raised metal nubs are specifically designed for traction and grip. Industry standards do not require the applica-

tion of additional anti-skid protection to the steps. I note that plaintiff's expert claims that anti-skid material should have been added to the steps yet he fails to cite or reference any standard, code, rule or regulation that requires the application of anti-skid protection.

"11. As noted above, the material used for the staircase treads is perforated steel. Based upon the evidence in the record, [and] my experience, training and knowledge of the type of staircase involved in plaintiff's alleged accident, there is simply no evidence to support an allegation that such a staircase was worn down as a result of foot traffic i.e., being stepped upon by construction boots whose souls [sic] are routinely made of rubber and/or leather.

"12. The testimony of the Atlantic Scaffold witness Kieran Ennis establishes that the subject stair tower had a rise of six feet six inches (vertically) over a seven-foot opening (horizontally) . . . The testimony, drawings, specifications and photographic evidence, establish that the height of the stair risers and the width and depth of the stair treads were uniform and therefore complied with good and accepted industry standards. In fact, based upon my experience, my training and my knowledge, as well as my familiarity with the type of staircase involved in the alleged accident, the staircase and its component parts are typical of staircases used to provide access to and from different levels of a construction site. Based upon my experience, my training and my knowledge, as well as my familiarity with the type of staircase involved in the alleged accident, the tread depth and width met good and acceptable construction industry standards. Furthermore, the tread depth and width was [sic] of sufficient size such that anyone ascending or descending the stairs had adequate space to bear upon the tread surface. Based upon my experience, my training and my knowledge, as well as my familiarity with the type of staircase involved in the alleged accident, there is no evidence to support the allegation that the subject staircase was smaller, narrower and steeper than what is routinely and customarily used in the construction industry."

In his affidavit sworn to January 7, 2013, Mr. Glabe averred:

"7. On November 13, 2012, I performed an inspection of the same make and model staircase as that used by the plaintiff at the time of the alleged accident. The inspection confirmed what I have previously affirmed in my October 16, 2012 affidavit in support of the Defendant's Motion for Summary Judgment.

"8. As noted by my credentials and qualifications, I am a certified instructor regarding the use of stairways/staircases at

construction sites; served as an international consultant regarding the use of the type of staircase involved in the alleged accident; have conducted investigations into the use and misuse of the type of staircase at issue. I am fully familiar with the involved staircase and its component parts.

"9. My inspection confirmed that the treads for the staircase are manufactured with perforated holes and raised metal nubs. The perforated holes in the stairs serve the purpose of allowing water, rain and snow to pass through them. The raised metal nubs are specifically designed for traction and grip. The type of tread on the subject staircase is the most widely used tread in the construction industry.

"10. Mr. Konon [plaintiff's expert] avers that the small round metal nubs provide limited anti-slip protection and even less when they are worn down, 'as they were here.' Mr. Konon does not aver that he inspected the subject staircase or that he even inspected a staircase of the same make and model. I have reviewed the same photographs of the staircase that Mr. Konon reviewed and it is simply not possible to conclude from the photographs that the stairs were worn or that they show signs of longstanding use and wear and tear with a decrease of anti-slip properties as he claims. Based upon my experience, the steel used in the manufacture of this type of staircase is specifically designed to withstand the usual wear and tear of being treaded upon by the soles of work boots, which will simply not cause it to lose its anti-slip properties. In fact, the components of the staircase as designed will routinely outlast the use of a particular staircase and these types of staircases may eventually be replaced based only upon a new design rather than due to wear and tear.

"11. Mr. Konon also repeatedly avers that additional anti-slip protection should have been added to the steps based upon industry standards without making reference to any specific rule, regulation and standard or code requirement. The explanation for his failure to do so is simple; there are no such rules, regulations, standards or codes.

"12. Although Mr. Konon claims that anti-skid materials should have been added to the steps, my inspection confirmed that the material used for the staircase treads, perforated steel with raised metal nubs, does not become worn down as a result of foot traffic i.e., being stepped upon by construction boots whose souls [sic] are routinely made of rubber and/or leather.

"13. Furthermore, Mr. Konon's contention that the stairs had a decreased coefficient of friction is utterly meaningless. There is absolutely no evidence that he ever inspected and tested the

involved step or steps, let alone that he tested them in conjunction with testing the condition of the soles of the plaintiff's construction boots as they were on the date of the alleged accident. Therefore, he could not possibly know what the coefficient of friction of the involved step was and cannot offer any opinion regarding same.

"14. Mr. Konon also avers that the staircase was narrow and steep but does not make reference to any measurements that would support such a conclusion or any statement as to how the width, depth and height differs from what is acceptable in the construction industry. My inspection of the staircase of similar make and model confirmed that the height of the tread rise (8 inches) was uniform throughout the staircase, as was the width (9³/₄ inches) and length (31³/₄ inches) of the stair treads. While simply reviewing the photographs of the staircase would not offer any evidence as to the traction on the treads, the coefficient of friction between the treads and plaintiff's work boots, or where a worker descending would place his foot, it does confirm that the height[,] width and depth of the stairs was uniform, which complies with good and accepted industry standards.

"15. There is no evidence to support the allegation that the subject staircase was smaller, narrower and steeper than what is routinely and customarily used in the construction industry, thereby causing people using it to make contact with the front portion of the step. Mr. Konon's sworn statement that the '[front] is the part of the stair tread that must provide slip resistance, if any . . .' is patently absurd. It is the stair tread that is stepped upon and must provide traction, as did the stair treads at issue. My inspection of the staircase of similar make and model confirms that the tread depth and width was of sufficient size such that anyone ascending or descending the stairs had adequate space to bear upon the tread surface and avoid contact with the nose or front of the step."

Manifestly, the foregoing expert evidence, when set against the expert evidence submitted by plaintiff on which the majority focuses exclusively, raises a triable issue as to whether the staircase in question afforded plaintiff adequate protection against slipping risks. Thus, defendants' expert, through his affidavit, flatly contradicts the majority's assertion that "it is *undisputed* that the staircase . . . malfunctioned or was inadequate to protect . . . against the risk of falling" (emphasis added). Again, that plaintiff fell does not necessarily mean that there was something wrong with the staircase (*see Blake*, 1 NY3d at 288). Indeed, if the fall by itself indicated a statutory

violation (as the majority seems to imply), there would be no reason for the majority to rely, as it does, on the affidavit of plaintiff's expert. Since the majority ascribes significance to plaintiff's expert evidence, it follows that defendants' conflicting expert evidence raises a triable issue as to whether the staircase was an "adequate safety device[ ]" (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]). What the statute requires is an adequate safety device, not a device so perfect that the worker need not exercise due care on his own behalf—a standard that would be unattainable. Accordingly, I would affirm the motion court's denial of summary judgment to plaintiff as to liability on his section 240 (1) claim, and dissent from the majority's disposition of the appeal to the extent it does otherwise.