This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 27
Thomas J. O'Brien, Jr.,
            Respondent,
        v.
Port Authority of New York and
New Jersey, et al.,
            Appellants,
Silverstein Properties, Inc.,
et al.,
            Defendants.




            Christopher Simone, for appellants.
            David H. Perecman, for respondent.






DiFIORE, Chief Judge:

        The issue on appeal is whether the Appellate Division properly determined that plaintiff Thomas O'Brien was entitled to summary judgment on liability on his Labor Law § 240 (1) cause of action. We conclude that there are triable issues of fact and that, therefore, summary judgment should have been denied.

- 1 -

Plaintiff was an employee of DCM Erectors (DCM), a subcontractor at the 1 World Trade Center construction site. Defendant Port Authority of New York & New Jersey was the owner of the premises and defendant Tishman Construction Corporation of New York was the general contractor.

On the day of the accident, plaintiff was working a 6:00 a.m. to 11:00 p.m. shift, maintaining two welding machines located on ground level at the site. It had been raining periodically during the day. At around 8:00 p.m., plaintiff headed downstairs to DCM's shanty, one level below ground, to get his rain jacket. Plaintiff used a temporary exterior metal staircase -- also referred to as a temporary scaffold. He testified at his examination before trial that the metal staircase was wet due to exposure to the elements, that his foot slipped off the tread of the top step and that he fell down the stairs, sustaining injuries. Plaintiff testified that the stairs were "steep, slippery and smooth on the edges." He also stated that his right hand was on the handrail, but he was unable to hold on because the handrail was wet.

Plaintiff commenced this Labor Law action and, as relevant here, sought partial summary judgment on his Labor Law §§ 240 (1) and 241 (6) causes of action. In support, plaintiff submitted an expert affidavit from Walter Konon, a professional engineer and licensed building inspector with expertise in construction engineering and construction safety. Konon did not

view the stairs themselves, but based his opinion on photographs in the record. Konon opined that the stairs were "not in compliance with good and accepted standards of construction site safety and practice" or with an Occupational Safety and Health Administration (OSHA) provision, which requires that slippery conditions on stairways be eliminated before use. Konon also stated that the stairs were "smaller, narrower and steeper than typical stairs," making it more difficult to maintain proper footing, and that the front portion of the stairs, which comes into contact with the workers' footwear, tended to become worn and slippery with use.

Konon claimed that the stairs showed signs of longstanding wear and tear. According to Konon, the only anti-slip measures in place at the time of plaintiff's fall were "small round protruding [metal] nubs," which offer "limited anti-slip protection" even when they are not worn down, as he maintained they were here. He further asserted that steel stairs have a tendency to become slippery when wet and have a decreased coefficient of friction, particularly when worn down. Konon concluded that "[a]ll of these conditions coupled with the fact that the stairs were wet due to rain and that the workers were allowed to work and use the stairs despite the rain and the wet stair treads, created a dangerous condition that was not in compliance with good and accepted standards of construction site safety and created a significant risk of slipping on the stairs

and of thus falling down the stairs."

Plaintiff also submitted an affidavit from a coworker, who stated that the stairs were slippery when wet and that "[a]lmost everyone was aware of the slippery nature of the stairs."

Defendants submitted two affidavits from their construction safety expert, David H. Glabe. Glabe is a licensed professional engineer and a consultant to the construction industry, specializing in scaffolding and staircases at construction sites. Like Konon, in his first affidavit, Glabe based his opinion on photographs of the staircase. He opined that the staircase was designed for both indoor and outdoor use and was "designed and manufactured so as to provide traction acceptable within industry standards and practice in times of inclement weather." He found "no evidence" that the perforated steel treads had been worn down by foot traffic. He further observed that the staircase provided both perforated holes to allow rain to pass through and raised metal nubs for traction, and opined that these anti-slip measures were sufficient. Glabe also disputed that the staircase was smaller, narrower or steeper than usual -- rather, based on his experience, training and familiarity with this type of staircase, "the tread depth and width met good and acceptable construction industry standards."

In a subsequent affidavit, Glabe described his inspection of a staircase of the same make and model as the one

at issue.  He confirmed that there was adequate space on the tread surface of the steps so that a person descending the stairs could avoid contact with the "nose or front of the step."  He characterized Konon's opinion that the stairs had a decreased coefficient of friction as "utterly meaningless" given Konon's failure to inspect or test the actual staircase either alone or in conjunction with testing plaintiff's footwear.  Glabe also opined that the use of both handrails could have helped prevent plaintiff's fall.  Finally, Glabe stated that, contrary to Konon's opinion, it was "not possible" to conclude from photographs in the record that the treads had been worn down. Rather, "the components of the staircase as designed will routinely outlast the use of a particular staircase and these types of staircases may eventually be replaced based only upon a new design rather than due to wear and tear."

Supreme Court denied the cross-motions for summary judgment on plaintiff's Labor Law § 240 (1) claim, finding that there were issues of fact as to whether the temporary staircase provided proper protection.  The court, however, granted plaintiff's motion for partial summary judgment on the Labor Law § 241 (6) claim, based on its determination that there had been a violation of Industrial Code 12 NYCRR § 23-1.7 (d) (relating to slipping hazards).

The Appellate Division modified the order, on the law, granting plaintiff's motion for partial summary judgment on the

Labor Law § 240 (1) claim and denying plaintiff summary judgment on the Labor Law § 241 (6) claim (131 AD3d 823 [1st Dept 2015]).[1] The Court observed that there were conflicting expert opinions as to the adequacy and safety of the staircase but nonetheless held that it was "undisputed that the staircase, a safety device, malfunctioned or was inadequate to protect plaintiff against the risk of falling" (131 AD3d at 825).

One Justice dissented in part and would have affirmed the denial of summary judgment on the Labor Law § 240 (1) claim. The dissent would have held that the conflicting expert affidavits gave rise to questions of fact concerning whether the accident was the result of a statutory violation.

The Appellate Division granted defendants leave to appeal by certified question, asking "Was the order of the Supreme Court, as modified by this Court, properly made?" We answer the certified question in the negative.

Under Labor Law § 240 (1), contractors and owners engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" must provide "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper

---

[1] Plaintiff did not cross-appeal from the Appellate Division order, thus rendering his Labor Law § 241 (6) argument beyond our review (see CPLR 5511; 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151 n 3 [2002]).

protection to a person so employed."  Although the statute is meant to be liberally construed to accomplish its intended purpose, absolute liability is "contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, the safety device of the kind enumerated therein" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]).  In other words, "[l]iability may . . . be imposed under the statute only where the 'plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential'" (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 97 [2015], quoting Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]).

        To the extent the Appellate Division opinion below can be read to say that a statutory violation occurred merely because plaintiff fell down the stairs, it does not provide an accurate statement of the law.  As we have made clear, the fact that a worker falls at a construction site, in itself, does not establish a violation of Labor Law § 240 (1) (see e.g. Berg v Albany Ladder Co., Inc., 10 NY3d 902, 904 [2008]; Toefer v Long Is. R.R., 4 NY3d 399, 407 [2005]; Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 288 [2003]; Narducci, 96 NY2d at 267).  Moreover, the present case is distinguishable from "cases involving ladders or scaffolds that collapse or malfunction for no apparent reason" where we have applied "a presumption that the

ladder or scaffolding device was not good enough to afford proper protection" (Blake, 1 NY3d at 289 n 8).

Here, by contrast, there are questions of fact as to whether the staircase provided adequate protection.  As noted above, defendants' expert opined that the staircase was designed to allow for outdoor use and to provide necessary traction in inclement weather.  Moreover, defendants' expert opined that additional anti-slip measures were not warranted.  In addition, he disputed the assertions by plaintiff's expert that the staircase was worn down or that it was unusually narrow or steep. In light of the above, plaintiff was not entitled to summary judgment on the issue of liability.[2]

Although the dissent places great weight on Zimmer v Chemung County Performing Arts, the holding in that case was that "in light of the uncontroverted fact that no safety devices were provided at the worksite, it was error to submit to the jury for their resolution the conflicting expert opinion as to what safety devices, if any," should have been employed (65 NY2d 513, 523 [1985] [emphasis added]).  By contrast, here, the experts differ as to the adequacy of the device that was provided.  Notably, both of these experts framed their opinions in terms of whether

---

[2] We note that defendants did not preserve for our review, and we thus do not address, the argument that the water was an ordinary slipping or tripping hazard unrelated to the danger that the staircase was designed to protect against (see e.g. Nicometi, 25 NY3d at 98-99).

there had been compliance with industry standards.  We agree that such compliance would not, in itself, establish the adequacy of a safety device within the meaning of Labor Law § 240 (1), but we do not read defendants' expert's opinion to be so limited.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, without costs, by denying plaintiff's motion insofar as it sought summary judgment on the issue of liability on his Labor Law § 240 (1) claim, and as so modified, affirmed, and the certified question answered in the negative.

O'Brien v The Port Authority of New York & New Jersey

No. 27

RIVERA, J.(dissenting):

The majority's conclusion that triable factual issues preclude summary judgment for the plaintiff reflects a misunderstanding of the legislative intent and statutory mandates of Labor Law § 240 (1). Section 240 is a "self-executing statute . . . containing its own specific safety measures" (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 522 [1985]), and subsection 240 (1) places ultimate responsibility for safety practices at construction sites on the property owner and general contractor (id. at 520). One of the core principles of our section 240 (1) jurisprudence is that it would undermine the purpose of this section to determine the liability of an owner, contractor, or agent by reference to industry custom and practice. Such a referral would allow owners, contractors and agents "to diminish their obligations under that statute and to set their own standard of care for the protection of workers at the worksite" (id. at 524). The majority strays from these fundamental teachings of our Labor Law jurisprudence.

Under our established case law the Appellate Division properly concluded that plaintiff is entitled to summary judgment on his Labor Law § 240 (1) claim. I would answer the certified

- 1 -

question in the affirmative, and therefore I dissent.

I.

Labor Law § 240 (1) imposes a non-delegable duty upon all owners, contractors, and agents thereof engaged "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" to provide "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other safety devices." Those devices must "be so constructed, placed and operated as to give proper protection to a person so employed" on the work site (Labor Law § 240 [1]; see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 499-500 [1993]; Rocovich v Consolidated Edison Co., 78 NY2d 509, 512 [1991]).

This duty has its roots in a 19th century legislative "concern over unsafe conditions that beset employees who worked at heights" (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 285 [2003], citing L 1885, ch 314). "In promulgating the statute, the lawmakers reacted to widespread accounts of deaths and injuries in the construction trades" and, "tellingly, . . . fashioned [that] pioneer legislation to 'give proper protection' to the worker" (Blake, 1 NY3d at 285, quoting Labor Law § 240 [1]). It embodies the Legislature's intent to "protect workers by placing ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor, instead of on

workers, who are scarcely in a position to protect themselves from accident" (Zimmer, 65 NY2d at 520 [internal citations and quotations omitted]).  Although Labor Law § 240 (1) evolved over time (see Blake, 1 NY3d at 285-286), the phrase "give proper protection" has remained "the heart of the statute and [has] endured through every amendment" (id. at 285).  "The objective was -- and still is -- to force owners and contractors to provide a safe workplace, under pain of damages" (Blake, 1 NY3d at 286; see Saint v Syracuse Supply Co., 25 NY3d 117, 124 [2015]; see generally Zimmer, 65 NY2d at 520).  As a consequence, we have adhered to the bedrock principle that the statute is to be construed liberally to achieve its purpose of protecting workers (id. at 521; Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 101 [2015]).

In accordance with those rules, the Court has steadfastly held that it is for the *courts*, not for those *responsible for providing worker protection* under Labor Law § 240 (1), to determine whether the mandates of that statute have been met.  Specifically, Zimmer explained that "[t]o determine an owner or contractor's liability for a violation of section 240 (1) by reference to whether safety devices customarily are used, and, if so, which ones give 'proper protection' would [be to] allow owners and contractors to diminish their obligations under that statute and to set their own standard of care for the protection of workers at the worksite" (Zimmer, 65 NY2d at 523-

524).

To vest owners, contractors, and their agents with the authority to promulgate their own protective standards "would [be to] clearly contravene the legislative purpose of placing 'ultimate responsibility for safety . . . on the owner and general contractor'" (id. at 524, quoting 1969 NY Legis Ann, at 407).  Indeed, the Zimmer Court echoed this cogent observation from the Appellate Division: "'[i]f the state of the building art is such that no devices have yet been devised to protect workers operating at such heights in dangerous work, it is illogical to conclude, given the purpose of the statute, that the responsibility of owners and contractors is then negated'" (Zimmer, 65 NY2d at 534, quoting Zimmer v Chemung County Performing Arts, 102 AD2d 993, 995 [3d Dept 1984] [Mikoll, J., dissenting]; see Bland v Manocherian, 66 NY2d 452, 459 [1985] [noting that Zimmer's "interpretation of the . . . provisions (of Labor Law § 240 [1]) is . . . binding precedent upon (this) (C)ourt"]).

For at least 30 years both our jurisprudence and parties litigating Labor Law § 240 (1) causes in courts of this state have abided by those teachings.  The majority's holding threatens their continued vitality.

II.

A. Summary Judgment Standard

It is well settled that "the proponent of a summary

judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).  Summary judgement is a drastic remedy reserved for those cases where there is no doubt as to the existence of material and triable issues of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]).  In

> "cases involving ladders or scaffolds that collapse or malfunction for no apparent reason, we have (ever since Stewart v Ferguson, 164 NY 553 [1900]) continued to aid plaintiffs with a presumption that the ladder or scaffolding device was not good enough to afford proper protection.  Once the plaintiff makes a prima facie showing the burden then shifts to the defendant, who may defeat plaintiff's motion for summary judgment only if there is a plausible view of the evidence -- enough to raise a fact question -- that there was no statutory violation and that plaintiff's own acts or omissions were the sole cause of the accident"

(Blake, 1 NY3d at 289 n 8).

Although the court must carefully scrutinize the motion papers in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference (see Negri v Stop & Shop, Inc., 65 NY2d 625 [1985]), bald, conclusory assertions are insufficient to defeat a summary judgment motion (Stonehill Capital Mgt., LLC v Bank of the W., 28 NY3d 439, 448 [2016]).  If, in the Labor Law § 240 (1) context, defendant's assertions in response to plaintiff's motion for summary judgment fail to raise a fact question as to the adequacy of the safety device, or the credibility of plaintiff, the

plaintiff must be accorded summary judgment (see Klein v City of New York, 89 NY2d 833, 835 [1996]).

B. Plaintiff's Motion and Defendants' Rebuttal[1]

Plaintiff Thomas J. O'Brien, Jr. sued defendants, amongst others, the Port Authority of New York and New Jersey, and Tishman Construction Corporation of New York, for injuries sustained as he was descending a scaffold tower staircase on the World Trade Center construction site where he was working as a crane operator and mechanic. As relevant to this appeal, plaintiff asserted that defendants, the premises owner and general contractor for the project, were liable for violations of Labor Law § 240 (1).

After discovery, plaintiff moved under CPLR 3212 for partial summary judgment on his Labor Law § 240 (1) claim, arguing that defendants failed to provide him with an adequate safety device as required because the stairs were wet, slippery, worn, narrow, steep, and lacked anti-slip measures. In support of his motion, plaintiff submitted his deposition detailing the circumstances leading to his fall and the condition of the staircase. He explained that at the time of his injury, he was employed at the construction site. It had been raining on and off throughout the day and at approximately 8 p.m., he went to

---

[1] My analysis is limited to that portion of the order granting summary judgment on plaintiff's Labor Law § 240 (1) claim as it is the only matter properly before the Court (maj op at n 1).

get his rain jacket, which was located in a shanty off a platform one flight down from where he was working.  To access the lower level, plaintiff proceeded to the nearby external temporary steel scaffold staircase, which was uncovered and exposed to the elements.  The natural light was dim and the area around the staircase was lit by artificial lights so plaintiff could see where he was walking.

Plaintiff described the steps as "metal, steep, slippery and smooth on the edges," including the treads.  The steps had holes throughout and the staircase had a metal railing on each side.  Plaintiff saw the steps were wet, put his right hand on the handrail, and attempted to descend the staircase. When he stepped on the first step, his foot slipped off the tread and he fell down the rest of the staircase, approximately eight steps, to the platform below.  The handrail was wet and so plaintiff was unable to get a grip as he fell.

As a result of the fall, plaintiff suffered various injuries, initially extending down his entire right side from where his head hit the scaffolding to his right ankle, and later including his back and neck.  Following the accident plaintiff had cervical spine surgery, was prescribed pain medication for his neck, arm, and hand, and was scheduled to have ankle surgery at the time of his deposition.

Plaintiff's additional submissions further described the slippery condition of the staircase and its impact on

plaintiff's fall.  He submitted pictures of the staircase and climatological data indicating it had rained shortly before he fell.  Plaintiff's Employer's Report for the Workers' Compensation Board stated the injury occurred while plaintiff was "descending stair tower during rain when foot skidded off stair tread causing O'Brien to fall injuring right foot/ankle," and another employer accident report stated that "heavy rain during the evening may have been a contributing factor as to the cause of the accident."  An affidavit from a coworker stated that the stairs "were slippery, especially when wet."  A general foreman of the supplier of this type of tower scaffolding acknowledged in his deposition that these steel stairs can become slippery when wet, that anything that makes these stairs slippery causes a danger, and that the nubs on the stairs meant for gripping wears out over time, as when people step on them all day long.

Plaintiff also submitted an expert affidavit from a professional engineer, with an expertise in construction engineering and construction safety, who opined that on the day of the injury the stairs were "not in compliance with good and accepted standards of construction site safety and practice."  He explained that wet steel treads "have a tendency to become slippery and have a decreased coefficient of friction, particularly under the circumstances here, where the stairs were worn and lacked proper and properly functioning anti-slip measures."  Further, "since these types of stair systems and the

stairs in them are smaller, narrower and steeper than typical stairs it is more difficult to maintain safe and proper footing." He stated, "those front portions of the stairs are what is contacted by the worker's feet those parts tend to become worn and more slippery as they become older and undergo more use, requiring the use or installation of more significant, effective and additional slip protection." He concluded that the staircase was unsafe as "the primary friction/anti-slip measure that these stairs were equipped with are small round protruding nubs, which provide limited anti-slip protection, at best, and even less as they became worn down, as they were here."

Defendants opposed the motion and cross-moved for summary judgment to dismiss plaintiff's Labor Law § 240 (1) claim, arguing that the injury was due to an ordinary danger not covered by the subsection, and, alternatively, that factual issues exist concerning the adequacy of the staircase as a safety device. In support, defendants submitted two affidavits from a professional engineer. Defendants' expert opined that plaintiff was provided with adequate protection pursuant to Labor Law § 240 (1). He noted that this type of staircase is designed to be used indoors and outdoors, including in inclement weather, and that its "perforated holes with raised nubs" are meant to allow water to pass through. In response to plaintiff's expert opinion that the nubs were worn, defendants' expert claimed there was no evidence the staircase was worn due to foot traffic. Defendant's

expert stated that the staircase was "designed and manufactured so as to provide traction within industry standards and practice in times of inclement weather."[2]

Supreme Court denied the parties' respective motions on the Labor Law § 240 (1) claim.  The Appellate Division modified, 4-1,  and granted plaintiff summary judgment on his Labor Law § 240 (1) claim, reasoning that, "[a] fall down a temporary staircase is the type of elevation-related risk to which section 240 (1) applies, and the staircase, which had been erected to allow workers access to different levels of the worksite, is a safety device within the meaning of the statute" (O'Brien v Port Auth. of New York, 131 AD3d 823, 824 [1st Dept 2015]).  The court concluded, "[g]iven that it is undisputed that the staircase, a safety device, malfunctioned or was inadequate to protect plaintiff against the risk of falling, plaintiff is entitled to summary judgment, whatever the weather conditions might have been" (id. at 825).  That determination was correct.

III.

Plaintiff established that while working at the construction site he was exposed to a gravity-related risk based

_____

[2]  As the majority points out, defendants did not preserve for our review the argument that the water was an ordinary slipping or tripping hazard unrelated to the danger that the staircase was designed to protect against (see Nicometi, 25 NY3d at 98-99).  Such an argument would be nonsensical here, as defendants' expert stressed that the staircase at issue was designed to provide adequate safety when wet.

on a height differential as he descended the stairs.  He used a temporary staircase provided to permit workers to ascend and descend from one level to another, and the staircase thus constituted a safety device for the risk associated with traversing the height differential.  The staircase failed to adequately protect plaintiff from the risk of slipping and that failure was a proximate cause of his injuries (see e.g. Bland, 66 NY2d at 460 [improper placement of ladder a proximate cause of fall]; Koenig v Patrick Const. Corp., 298 NY 313, 319 [1948] [ladder slipping a proximate cause of fall]).

The burden then shifted to defendants to rebut and present "evidence of a triable issue of fact relating to the prima facie case or to plaintiff's credibility" (Klein v City of New York, 89 NY2d 833, 835 [1996]).  Defendants concede that the staircase provided access from the ground to a lower level on the construction site, and that while at the work site plaintiff fell down the staircase causing him injuries.  Defendants, like plaintiff, describe the metal staircase as temporary, featuring handrails and staircase treads with perforated steel and raised metal nubs.  Most importantly, and fatal to their position, defendants did not present evidence to rebut plaintiff's evidence that the staircase generally is slippery, especially when wet, as it was on the day of plaintiff's injury.[3]

---

[3] Instead, defendants advance the meritless arguments that Labor Law § 240 (1) does not apply to plaintiff's case because his accident arose from an ordinary danger, not a statutorily

Instead, defendants maintain, and the majority agrees, that there is an issue of material fact as to whether the staircase met applicable safety standards and was in good condition at the time of the accident.  This argument is based on a misunderstanding of the Labor Law.  Defendants assert that, contrary to the plaintiff's expert opinion, their expert opined that the staircase met industry standards, therefore creating a question for the fact-finder.  However, as this Court stated in Zimmer, "liability is mandated by the statute without regard to external considerations such as rules and regulations, contracts or custom and usage" (id. at 523).  Although industry practices, custom and usage may be relevant to determine a violation of §§ 200 and 241 (6) of the Labor Law, "where injury is allegedly caused through a violation of section 240 (1), which establishes its own unvarying standard, evidence of industry practice is immaterial" (id.).  The Court has made clear that reliance on

contemplated elevation-related risk, and because plaintiff was not engaged in an elevation-related task at the time of the fall. The former argument was properly rejected by the Appellate Division majority and dissent, indeed by every judge who has considered it in the course of this litigation, and is not even mentioned by the majority here.
We rejected the logic of the latter argument in Nicometi, where we stated that "[t]he dispositive question . . . is not whether plaintiff was actively performing a construction task -- as compared to retrieving a tool in furtherance of that object -- at the moment of [the plaintiff's] accident" because such distinction "would generally be illogical and inconsistent with the purpose and liberal interpretation of section 240 (1) to protect workers" (25 NY3d at 98).  The section is not limited to the exact moments when a worker is engaged in a particular task, but includes elevation risks attendant to the work.

industry standards for a Labor Law § 240 (1) claim is antithetical to the legislative scheme because it "would allow owners and contractors to diminish their obligations under that statute and to set their own standard of care for the protection of workers at the worksite.  This would clearly contravene the legislative purpose of placing 'ultimate responsibility for safety . . . on the owner and general contractor'" (Zimmer, 65 NY2d at 524 [internal citation omitted]).

Defendants' argument that there is a question of fact as to whether the temporary staircase was kept in good condition is based on the respective experts' opinions concerning the condition of the metal nubs of that device -- which defendants' expert stated is what provides the steps' anti-slipping property. Even if the nubs were not worn this is of no moment.  First, this is because defendants' expert relied on the adequacy of the nubs to prevent slipping based on industry standards, which is not sufficient to avoid liability under Labor Law § 240 (1).  Second, defendants failed to address plaintiff's testimony that because the handrails were metal and wet he could not get a grip as he fell.  Thus, even apart from any question as to the efficacy of the metal nubs, defendants are liable under section 240 (1) because they failed to provide adequate handrail protection to prevent a fall or minimize injuries resulting from a slip.

Defendants' contention that there is a question of fact as to whether any device would be able to prevent any and all

accidents -- what the dissent in the Appellate Division referred to as the existence of "a staircase offering superior protection from the slipping hazards" presented here -- is merely an attempt to revive an argument expressly rejected in Zimmer (65 NY2d at 523). Considering the purposes of the statute, it would be illogical to absolve owners of liability because devices have not yet been developed to adequately protect workers from elevation-related risks.

The same holds true here. Defendants cannot escape liability under Labor Law § 240 (1) by providing an inadequate safety device merely because there is no safer *staircase* available. The Labor Law puts the responsibility to find an appropriate safety device squarely on the shoulders of defendants (Zimmer, 65 NY2d at 524; Blake, 1 NY3d at 286). A metal outdoor staircase known to be slippery, especially one exposed to rain, is not an appropriate safety device within the meaning of the statute. This point is implicitly conceded by defendants when they acknowledge that there was an interior staircase unexposed to the rain. Defendants could have, but did not, limit use of the metal staircase at issue here to "dry days." Even if the temporary staircase was the industry standard for wet conditions, the defendants could have ensured safer descent by roping off the wet staircase and directing workers to use the dry interior

staircase.[4]

Nor is defendants' assertion that the injuries are due to plaintiff's negligence relevant to the Labor Law § 240 (1) claim.  In another context we have recognized the dangers associated with walking on steps, particularly on the nose of the step, which plaintiff stated was the area in which his foot slipped.  "That a person may place his or her foot on a step in such a way as to avoid the nosing does not imply that every person will always do so.  What counts here is not whether a person could avoid the defect, but whether a person would invariably avoid the defect while walking in a manner typical of human beings descending stairs" (Hutchinson v Sheridan Hill House Corp., 26 NY3d 66, 82 [2015]).

IV.

This is not a complex case, and contrary to the majority's conclusion, there is no factual issue to be resolved by the trier of fact.  As the summary judgment submissions establish, plaintiff was injured at his work site when he lost his footing on a slippery wet step of a temporary metal staircase as he descended from one level to another.  Defendants failed to

---

[4] Defendants also could have provided some other protection on this very staircase -- such as additional anti-slipping tread material or some nonslip material on the handrails for a worker to hold.  Defendants' expert did not dispute that this was possible, nor that it would have made the staircase safer, but merely averred that plaintiff's expert failed to cite or reference any standard, code, rule or regulation that requires such measures.

provide a safety device adequate to protect plaintiff from this fall. To conclude otherwise is to credit defendants' contention that compliance with industry standards and practice is equivalent to compliance with Labor Law § 240 (1). That novel conclusion is one that conflicts with long-held jurisprudence of this Court, and it is one that I decline to join. Accordingly, I would affirm the part of the Appellate Division order concluding that plaintiff is entitled to summary judgment on liability under Labor Law § 240 (1).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order, insofar as appealed from, modified, without costs, by denying plaintiff's motion insofar as it sought summary judgment of liability on his Labor Law § 240(1) claim and, as so modified, affirmed and the certified question answered in the negative. Opinion by Chief Judge DiFiore. Judges Abdus-Salaam, Stein and Garcia concur. Judge Rivera dissents in an opinion in which Judges Fahey and Wilson concur.

Decided March 30, 2017