Fuller v KFG Land I, LLC (2020 NY Slip Op 07998)





Fuller v KFG Land I, LLC


2020 NY Slip Op 07998


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020

Before: Gische, J.P., Gesmer, Kern, Kennedy, JJ. 


Index No. 158511/16E Appeal No. 12350 Case No. 2019-5509 

[*1]Elbert Fuller, et al., Plaintiffs-Respondents-Appellants,
v
KFG Land I, LLC, Defendant-Appellant-Respondent.


Mauro Lilling Naparty, LLP, Woodbury (Seth M. Weinberg of counsel), for appellant-respondent.
Lurie, Ilchert, Mac Donnell and Ryan, LLC, New York (George W. Ilchert of counsel), for respondents-appellants.



Order, Supreme Court, New York County (Kathryn E. Freed, J.), entered July 8, 2019, which, to the extent appealed from as limited by the briefs, granted defendant's motion for summary judgment dismissing the Labor Law § 240(1) cause of action and denied the motion as to the common-law negligence cause of action, modified, on the law, to grant the motion as to the common-law negligence cause of action, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.
We affirm the dismissal of the Labor Law § 240(1) claim and dismiss the common-law negligence claim. KFG Land I, LLC (KFG Land) established that the exclusivity provisions of the Workers' Compensation Law (WCL) apply and that plaintiff's recovery for his injuries is limited to the workers' compensation benefits he applied for and received under the insurance policy in the name of nonparty KFG Operating I, LLC (KFG Operating) (see WCL 11; 29[6]).
KFG Land moved for summary judgment after the parties had engaged in extensive discovery, which included the exchange of documents and depositions. Among the persons deposed was Charles-Edouard Gros. Gros testified and also provided sworn affidavits that on September 22, 2019 three limited liability companies were formed. Gros testified that he is a managing member of nonparty Hopkins Ventures, and that Hopkins Ventures is the member of each of the other two LLCs also formed at the time, defendant, KFG Land and KFG Operating. According to Gros, the companies were established with the purpose, common goal and intention of purchasing the real property at 155 Dean Street, Brooklyn, New York, which was improved by a building housing a skilled nursing facility then known as Bishop Mugavero. KFG Operating is plaintiff's employer and the nursing facility is now known as the Hopkins Center. KFG Land is a single purpose limited liability company that was formed to hold title ownership to the real property. KFG Operating staffs, operates, and maintains the nursing facility. The closing took place in March 2011.
Prior to the closing, KFG Land and KFG Operating entered into a lease agreement dated September 29, 2010 identifying KFG Land as the lessor and KFG Operating as lessee of the nursing facility. Pursuant to the lease, KFG Operating undertook to maintain the premises, including any structural alterations and repairs. Plaintiff claims he was injured while performing work on the roof of the nursing home. He filed for and received workers' compensation benefits under the policy that KFG Operating maintains for the benefits of the employees. Some of the employees were previously employed by Bishop Mugavero and continued to work for the Hopkins Center after the purchase was completed. Gros testified that KFG Land does not have any employees and that its business is ownership of the property. KFG Land does not maintain its own WCL policy, because it has no one to insure.
KFG Land and KFG Operating have maintained [*2]155 Dean Street as their business address since the closing. Gros also states that Hopkins Ventures files taxes on behalf of both KFG Land and KFG Operating under the taxpayer identification number for Hopkins Ventures. Since this is how the LLCs have structured their operations, neither KFG Land nor KFG Operating file independent tax returns. Their tax returns are completed through Hopkins Ventures. A sample tax return was provided during discovery. Gros avers that all three LLCs have always functioned as a single integrated entity for the purposes of owning and maintaining the Hopkins Center. He states that not only are KFG Land and KFG Operating wholly owned subsidiaries of Hopkins Ventures, but, also, he is in control of the companies because he is a managing member of Hopkins Ventures. According to Gros, Susan Rice, the licensed administrator for the Hopkins Center, reports directly to him because he is a managing member of Hopkins Ventures.
The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Based upon the foregoing, and the documentary evidence produced, KFG Land argues that Supreme Court erred in denying its motion for summary judgment dismissing plaintiff's common-law negligence claim because it met its burden of proving that all three companies function as a single integrated entity and that their collective enterprise is the acquisition, ownership, and operation of the nursing home.
The exclusivity defense is available where the relationship among business entities is so close that they are really alter egos of one another (Batts v IBEX Const., LLC, 112 AD3d 765, 766 [2d Dept 2013]). The defense is also available, however, in situations where the plaintiff's employer and the defendant have functioned as one company (Carty v East 175th St. Hous. Dev. Fund Corp., 83 AD3d 529 [1st Dept 2011]). In those circumstances, two or more companies function much as joint venturers (Carty v E. 175th St. Hous. Dev. Fund Corp., 32 Misc 3d 1217[A] [Sup Ct, Bronx County 2010], 2010 NY Slip Op 52412[U], *2-3, affd 83 AD3d 529 [1st Dept 2011]). An employer's organization into separate entities does not preclude a finding that the plaintiff-employee is limited to benefits under the WCL, because "for statutory purposes, an employee may have more than one employer" (Ramnarine v Memorial Ctr. for Cancer & Allied Diseases, 281 AD2d 218, 219 [1st Dept 2001]). It is not necessary for an employer to be the direct, "paper" employer of an injured worker for that employer to benefit from the protection of the WCL. Rather, "[m]any factors are weighed in deciding whether a special employment relationship exists" (Thompson v Grumman Aerospace Corp., 78 NY2d 553, 558 [1991]) "[A] general employee of one employer may also be in the special employ of another[*3], notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits" (Ramnarine at 219). It is the interconnectivity of the entities that determines whether the benefit of the WCL should apply to an entity that is not the direct employer of an injured person.
Here KFG Land argues that plaintiff is relegated to his remedy under the WCL held in the name of KFG Operating because KFG Land and KFG Operating, plaintiff's nominal employer, are sister entities, and both companies functioned and interfaced as a single integrated entity from the inception of the process to obtain, maintain and operate the nursing home until the present time (see Carty, 83 AD3d 529; Ramnarine, 281 AD2d 218). Both companies are wholly owned by a common parent company (Hopkins Ventures), through which they filed taxes, using the parent company's taxpayer identification number; they shared resources, including their business address, all administrative and managing personnel, and they were formed on the same date for the same common business purpose, namely to purchase and operate the skilled nursing facility (see Carty, 83 AD3d 529; Ramnarine, 281 AD2d 218). Thus, while plaintiff's employer and KFG Land were separately organized, both are wholly owned subsidiaries of Hopkins Ventures and managed by Gros. KFG Land, as the title owner of the real property, and KFG Operating, as the operator of the building on the property, are two halves of the whole that is known to the public as the Hopkins Center. KFG Land has established that these companies held themselves out to the public as an integrated institution — the Hopkins Center — and all three entities shared the same space and the same principal, and filed one tax return (see Ramnarine, 281 AD2d 218). By doing so, defendant demonstrated its prima facie entitlement to judgment as a matter of law by establishing that the companies were engaged in a joint venture, which was owning and operating the skilled nursing home. Since the companies have operated as a single integrated entity, the exclusivity rule of the WCL applies to insulate KFG Land from liability (see WCL 11, 29[6]). "[A]n employee working for one employer is considered an employee of the other employers in the joint venture" (Mitchell v A.F. Roosevelt Ave. Corp., 207 AD2d 388, 389 [2d Dept 1994]). Consequently, the employee's exclusive remedy against the entities forming the joint venture is workers' compensation.
Once a defendant makes its prima showing of entitlement to judgment as a matter of law, "the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure so to do, and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement" (Zuckerman, 49 NY2d at 560). In response to the motion, plaintiff submitted nothing of probative value [*4]that would raise a triable issue of fact, despite having had the benefit of extensive discovery. Although plaintiff made an omnibus motion seeking sanctions and claiming that it was entitled to more discovery, that motion was denied by Supreme Court. Plaintiff points out that KFG Land and KFG Operating were formed for different purposes: KFG Land to own the property and KFG Operating to operate and maintain the facility. Plaintiff also out points out that KFG Land and KFG Operating have separate bank accounts. These are but two factors to be considered for purposes of the WCL's exclusivity defense.
Although the dissent expresses concern about certain discrepancies it perceives in Gros's testimony, these discrepancies do not contradict the baseline facts as set forth above. The baseline facts support defendant's motion for summary judgment. Additionally, the redaction of the tax document provided by defendant is a red herring since the protection of tax information in a civil action is not unusual (see Pinnacle Sports Media & Entertainment, LLC v Greene, 154 AD3d 601, 601 [1st Dept 2017] ["Disclosure of tax returns is generally disfavored due to their confidential and private nature"]. The redacted tax return is not inconsistent with defendant's position.
Those issues aside, we find that Hopkins Ventures has shown ownership of 100% of both KFG Land and KFG Operating and that it exercised complete managerial and financial control over both companies, operating them as if they were a single integrated entity. Since the evidentiary proof submitted by KFG Land was sufficient to make out its prima facie case, that the LLCs functioned as a single integrated entity in connection with the joint venture of acquiring and operating the property and nursing home, the exclusivity provisions of the WCL apply. Plaintiff failed to raise a material issue of fact to defeat defendant's motion for summary judgment. The motion should be granted, and the complaint dismissed (see Kudelski v 450 Lexington Venture, 198 AD2d 157 [1st Dept 1993]).
Although the dissent reaches the underlying merits of plaintiff's cross appeal concerning the dismissal of his Labor Law §240(1) on the basis that he was not engaged in a "repair" or "alteration" within the meaning of Labor Law § 240(1) at the time of his accident, we affirm on the ground that even if plaintiff was engaged in alteration or repair, the exclusivity provisions of the WCL would be his sole remedy since he applied for and received those benefits.
All concur except Gesmer, J.
who dissents in a memorandum
as follows:




Gesmer, J. (dissenting)
 

Plaintiff Elbert Fuller was injured while working at the skilled nursing home operated by his employer and located on property owned by defendant. He now seeks damages from defendant.
The threshold issue in this case is whether defendant may escape liability for plaintiff's injury by claiming that it functions as a single integrated entity with plaintiff's [*5]employer. The motion court found that it failed to establish a prima facie case that it does, and I agree. The majority disagrees and finds that defendant and plaintiff's employer should be treated as one employer for purposes of the Workers' Compensation Law. This finding gives defendant the benefit of a complete defense against plaintiff's claims for damages, i.e., the exclusivity provisions of the Workers' Compensation Law (Workers' Compensation Law §§ 11; 29[6]; see also Ramnarine v Memorial Ctr. for Cancer & Allied Diseases, 281 AD2d 218 [1st Dept 2001]). For the reasons set forth more fully below, I disagree and would affirm the motion court on this issue.
In light of the majority's ruling on the Workers' Compensation issue, it did not reach the second issue, which is whether defendant avoids liability by showing that plaintiff was engaged in routine maintenance at the time of his accident. On this issue, I disagree with the motion court and would deny dismissal of plaintiff's Labor Law claims. The majority also did not address defendant's argument that the motion court should have dismissed plaintiffs' common-law negligence claim. On this issue, I would reverse the motion court.
Turning first to the issue of whether defendant and plaintiff's employer constitute a single integrated entity, I agree with the majority that the two share a common owner, Hopkins Ventures, LLC (Hopkins). However, from there we diverge, as I disagree with the majority that the record supports findings that plaintiff's employer and defendant were formed for the same purpose, filed taxes through Hopkins, had common administrative and managing personnel and the same business address, or held themselves out to the public as an integrated entity. I also disagree with the majority's alternative theory that defendant is exempt because it established that it had formed a joint venture with plaintiff's employer. Indeed, defendant did not make this claim either in the motion court or on appeal. For this Court to decide an appeal on a basis not raised by the parties at all presents "an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made" (Misicki v Caradonna, 12 NY3d 511, 519 [2009]). Moreover, as we have previously held, "A motion for summary judgment on one claim or defense does not provide a basis for searching the record and granting summary judgment on an unrelated claim or defense," since it deprives the other party of the opportunity to oppose it (Baseball Off. of Comm'r. v Marsh & McLennan, 295 AD2d 73, 82 [1st Dept 2002] [internal quotation marks omitted]; see also Shugrue v Stahl, 156 AD3d 590, 590-591 [1st Dept 2017]). Even if defendant had raised this claim on appeal, we could not determine this mixed question of law and fact not raised by the parties before the motion court (see Watson v City of New York, 157 [*6]AD3d 510, 511 [1st Dept 2018]; Gary v Flair Beverage Corp., 60 AD3d 413, 414 [1st Dept 2009] [Appellate Division may review claim raised for the first time on appeal only where it is "legal in nature and apparent on the face of the record"]).
Under our precedent, the fact that two entities share a common owner is insufficient for a finding, as a matter of law, that they function as a single integrated entity. For example, we have declined to find an alter ego relationship warranting the exclusivity defense where the building owner that employed the plaintiff and the defendant management company had a common principal and the defendant was the managing agent for the plaintiff's employer, pursuant to their contractual agreement (Kolenovic v 56th Realty, LLC, 139 AD3d 588 [1st Dept 2016]).[FN1] We have also declined to find an alter ego relationship for the purposes of the Workers' Compensation Law where the two entities shared common owners and officers, and one ran paint stores on property owned by the other (Figueiredo v New Palace Painters Supply Co. Inc., 39 AD3d 363, 364 [1st Dept 2007]).
Where this Court has found that the parties had an alter ego relationship sufficient to apply the exclusivity defense, the entities have been far more intertwined with each other than is the case here, in that they shared personnel, financial management, and insurance policies. In Ramnarine, this Court found that two companies functioned as a single integrated entity where plaintiff's employer and defendant shared common management, executive officers, a common policy manual, a joint insurance policy, and a combined budget, and the companies issued a combined audited financial statement, held themselves out to the public as an integrated institution, utilized a single human resources department that issued paychecks to all employees, and operated out of the same space (281 AD2d at 218).
The majority and defendant rely on Carty v East 175th St. Hous. Dev. Fund Corp. (83 AD3d 529 [1st Dept 2011]), another case in which we found an alter ego relationship. Defendant claims that Carty is similar to this case because, in both cases, the defendant had no employees and owned the property where the plaintiff was injured, while the plaintiff's employer operated a facility on the property. However, in Carty, we also found and relied upon the additional ties between the two companies, including that they shared corporate officers, financial management, administrative headquarters, an insurance policy, and a common purpose, and that the plaintiff's employer was a member of the defendant (id.).[FN2] Those factors are not present here.
In my view, for the reasons discussed below, this case is similar to the cases in which we did not find an alter ego relationship (Kolenovic, 189 AD3d at 589 ["that the two entities have a principal in common is insufficient to establish that they were alter egos"]; Figueiredo, 39 AD3d at 364 ["while they shared common owners and officers, Fran[*7]—Ju and New Palace were separate entities, not a parent/subsidiary. Fran—Ju held the real property; New Palace ran the paint stores"]), and is entirely distinguishable from Ramnarine and Carty, where we did. Accordingly, I would affirm the motion court's denial of summary judgment to defendant based on the exclusivity defense.
At the outset, I note that the majority relies almost exclusively on statements in the record by Charles-Edouard Gros. However, the two affidavits executed by Mr. Gros and the transcript of his deposition testimony contain multiple contradictory and conflicting statements about the management of the three entities at issue, and even about his own role in them. Accordingly, his statements do not meet defendant's burden to make out a prima facie case of entitlement to summary judgment, but rather demonstrate the many questions of fact requiring a trial.
Moreover, Mr. Gros's inability to recall important information renders him unreliable as a source of the relevant facts. In his initial affidavit, he described himself as "the managing member of Hopkins Ventures, LLC," which he stated was the sole member of both defendant KFG Land I, LLC, and KFG Operating I, LLC, which is plaintiff's employer. At his deposition, he admitted that he could not remember the name of defendant's employer, and acknowledged that he was not involved in its day-to-day operation. He also could not recall the name of Hopkins Ventures, LLC, the names or precise number of the other individual managing members of Hopkins, or whether defendant or Hopkins had its own workers' compensation insurance policy. He "believe[d]" that defendant owned the property where plaintiff was employed, but could not recall when defendant may have acquired it, and he was unable to testify with certainty that defendant and plaintiff's employer filed taxes through Hopkins. Accordingly, defendant, which relied in its summary judgment motion on Gros's testimony and his statements in his affidavits, failed to make out a prima facie showing that it is entitled to summary judgment as a matter of law.
Similarly, Mr. Gros's testimony contradicts the majority's claim that Mr. Gros "avers" that the three entities function as one under the managerial and financial control of Hopkins. In his 2018 affidavit, Mr. Gros claimed that "Hopkins Ventures, KFG Land, and KFG Operating function as one entity for the purposes of owning and maintaining the Hopkins Center under my sole control as the managing member of Hopkins Ventures." However, at his deposition, he admitted that he is not the sole managing member of Hopkins, and that he was not involved in the day-to-day operation of plaintiff's employer, whose name he could not recall. He further acknowledged that plaintiff's employer maintains its own bank account, out of which its employees are paid, and that a licensed nursing home administrator, Susan Rice, runs the day-to-day operations of plaintiff's employer. He initially stated that Ms. [*8]Rice "answers" to the members of Hopkins. However, he then clarified that Ms. Rice was not expected to obtain authorization from Hopkins, but that he "believe[d]" that, if plaintiff's employer wished to initiate a "major project," "they would discuss it" with a managing member of Hopkins. Furthermore, when asked whether either Hopkins or defendant had any employees, Mr. Gros responded, "Not that I recall." If defendant has no employees, it cannot share administrative or managerial personnel with plaintiff's employer. There is no claim that plaintiff's employer manages defendant or that defendant manages plaintiff's employer, and Mr. Gros did not testify about how defendant was managed or administered after defendant purchased the property. The record demonstrates only that they share a common owner, Hopkins. It does not support a finding that Hopkins managed either entity, or that either plaintiff's employer or defendant managed the other. Mr. Gros's mere conclusory statement that Ms. Rice reported to the members of Hopkins does not establish that Hopkins managed plaintiff's employer, particularly since he testified that she was not required to obtain authorization from them. Accordingly, I disagree that the record supports a finding that defendant and plaintiff's employer were managed by Mr. Gros, as the majority states.
I also disagree with the majority that the record supports a finding that defendant and plaintiff's employer were formed for the same purpose. Mr. Gros did not testify at his deposition about the purposes for which defendant and plaintiff's employer were formed. In his 2019 affidavit, he claimed that defendant "was created to purchase and own the premises, while [plaintiff's employer] was created to operate the skilled nursing facility at that location." This statement supports a finding that the two entities were formed for different purposes, not unlike the entities in Figueiredo (39 AD3d at 364), in which we declined to find an alter ego relationship where one entity ran paint stores on property owned by the other entity. Moreover, the lease between defendant and plaintiff's employer provides that plaintiff's employer is responsible for all maintenance and repair of the property. Accordingly, the record supports a finding that defendant's sole corporate purpose is to purchase and own the property, while plaintiff's employer's corporate purpose is to manage the property and run a nursing home there. The fact that one entity owned the property where the other ran its business does not establish an alter ego relationship (see Figueiredo, 39 AD3d at 364).
I also disagree that the record supports a finding that plaintiff's employer and defendant have filed taxes through Hopkins. Mr. Gros testified that his "understanding" was that defendant and plaintiff's employer filed taxes through Hopkins, adding, "but I'm not an accountant." This testimony is insufficient to meet defendant's burden to proffer "evidentiary proof in admissible [*9]form" establishing a defense as a matter of law (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Even if Mr. Gros's testimony were definitive that he had personal knowledge that plaintiff's employer and defendant filed taxes through Hopkins, secondary evidence of the contents of a document is only admissible where "the proponent of the substitute has sufficiently explained the unavailability of the primary evidence" (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 644 [1994]). Here, defendant has not claimed that any tax return is unavailable. Moreover, the claim that plaintiff's employer and defendant filed taxes through Hopkins is contradicted by the only tax return in the record, which was produced to plaintiff in discovery, was filed by Hopkins on its own behalf, and makes no mention of either plaintiff's employer or defendant.[FN3]
For the same reasons, defendant's claim that it shared an insurance policy with plaintiff's employer, based on Mr. Gros's statement in his 2018 affidavit, also fails to meet defendant's burden to make out its prima facie case on a summary judgment motion (id.). Indeed, the majority apparently concedes that the two entities did not share an insurance policy. Mr. Gros acknowledged at his deposition that plaintiff's employer is the only named insured on its workers' compensation insurance policy, and he could not recall whether Hopkins or defendant had its own workers' compensation insurance policy. In his 2019 affidavit, Gros did not repeat his claim, by then contradicted by his deposition testimony, that the two entities shared an insurance policy. Gros's mutually contradictory statements cannot be the basis for an award of summary judgment.
There is no support in the record for the claim that defendant and plaintiff's employer shared a business address. Plaintiff's employer is located at 155 Dean Street, and lists that address on various documents, including its Certificate of Assumed Name pursuant to the General Business Law. However, there are no documents in the record that list a business address for defendant. Accordingly, I disagree that the record supports a finding that defendant shared a business address with plaintiff's employer.
There is also no support in the record for the majority's statement that plaintiff's employer and defendant held themselves out as a single integrated entity. Indeed, the lease provides that plaintiff's employer is solely responsible for managing the property, and there is no claim that defendant had any involvement in the management of plaintiff's employer. This falls far short of the showing made in Ramnarine, where the four entities in dispute issued a combined audited financial statement, were covered by a single insurance policy, issued a joint advertisement for employees for all four entities that identified only one as the employer, solicited funds for all of the entities under the name of one of them, and all operated out of the same space, which bore [*10]the name of one entity (281 AD2d at 218).
In order to reach its conclusion, the majority relies on a 25 year old Second Department case, not cited by either party, and then, to come within its reach, finds that defendant and plaintiff's employer had formed a joint venture, even though defendant has never made this claim, either before the motion court or on appeal. This is entirely improper (Baseball Off. of Comm'r., 295 AD2d at 82), particularly on this mixed question of law and fact (Watson, 157 AD3d at 511).
Even if this Court could properly consider such a theory, defendant has not shown facts to prove that it had formed a joint venture with plaintiff's employer or Hopkins. To establish the existence of a joint venture, defendant would have to prove
"acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses" (Slabakis v Schik, 164 AD3d 454, 455 [1st Dept 2018] [internal quotation marks omitted], lv denied 32 NY3d 912 [2018]).
Here, there is no evidence that defendant and plaintiff's employer exercised joint proprietorship and control over anything or that they shared profits and losses with each other. To the contrary, the lease provides that plaintiff's employer manages the property and pays rent to defendant.[FN4] This is in sharp contrast to the facts in Mitchell v A.F. Roosevelt Ave. Corp. (6207 AD2d 388, 389 [2d Dept 1994]), the case relied on by the majority, in which the parties had a written partnership agreement and joint payroll records.
My colleagues in the majority cite to Ramnarine (281 AD2d 218) and Carty (83 AD3d 529) in reaching their determination that defendant and plaintiff's employer are alter egos. As discussed above, the facts of those cases are entirely distinguishable from the record in this case, which does not establish that plaintiff's employer and defendant are operated by Hopkins at all, much less as a single entity, that they have any officers or administrators in common, that they filed taxes through a parent company, that they shared financial management or an insurance policy, or that they were established for a common purpose.
In declining to find an alter ego relationship in Figueiredo (39 AD3d at 364), we cited to Longshore v Davis Sys. of Capital Dist. (304 AD2d 964, 965-966 [3d Dept 2003]), where our colleagues in the Third Department noted that
"'The individual princip[als] in this business enterprise, for their own business and legal advantage, elected to operate that enterprise through separate corporate entities. The structure they created should not lightly be ignored at their behest, in order to shield one of the entities they created from . . . common-law tort liability'" (Longshore, 304 AD2d at 965, quoting Buchner v Pines Hotel[*11], 87 AD2d 691, 692 [1982], affd 58 NY2d 1019 [1983]).
That principle should equally apply here.
I now turn to the question of whether plaintiff was engaged in "routine maintenance" at the time of his accident and thus is precluded from seeking remedies under the Labor Law. On this issue, I disagree with the motion court, and would find that plaintiff has raised a question of fact requiring trial.
Plaintiff was employed as a maintenance worker. He was instructed by his boss to replace panels on the side of an air conditioning unit located on the roof. He testified that he had never engaged in that type of work before and that any similar projects had always been carried out by contractors. To remove and replace the panels, plaintiff had to climb a six-foot ladder to a "catwalk" above the roof, saw the panels to the appropriate size for installation, and then climb up and insert the panels into place. While handing one of the panels to his coworker, plaintiff fell off the catwalk, sustaining fractures to his spine and foot. He recalled that "[t]he catwalk had no handrails or anything to grab onto as [he] fell" and that no safety devices were provided in case of a fall.
Labor Law § 240(1) requires "[a]ll contractors and owners and their agents" to provide safety equipment to workers "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure." The provision "does not cover routine maintenance done outside the context of construction work" (Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 882 [2003]). A failure to provide safety equipment resulting in injury to a worker engaged in the type of work covered by the statute "establishes an owner or contractor's liability as a matter of law" (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 521 [1985]). Labor Law § 240(1) is to be construed as liberally as possible in order to accomplish its purpose of protecting workers (Saint v Syracuse Supply Co., 25 NY3d 117, 124 [2015]). "[T]he question whether a particular [task] falls within section 240(1) must be determined on a case-by-case basis, depending on the context of the work" (Prats v Port Auth., 100 NY2d at 883).
In determining whether work is considered a "repair" under Labor Law § 240(1), "[a] factor to be taken into consideration is whether the work in question was occasioned by an isolated event as opposed to a recurring condition" (Dos Santos v Consolidated Edison of N.Y., Inc., 104 AD3d 606, 607 [1st Dept 2013]). Here, plaintiff and his coworker had never before been asked to do any work on the panels prior to plaintiff's accident, and outside contractors had been hired when such work was necessary in the past. Additionally, the panels were untouched for four or five years, and were only installed because of noise complaints from neighbors. Accordingly, the installation of the panels was neither a recurring event nor maintenance, and defendant failed to establish as a matter of law that plaintiff [*12]was engaged in repair work at the time of his fall.
Furthermore, plaintiff has, at a minimum, raised an issue of fact as to whether he was engaged in the alteration of a structure at the time of his injury. For work to qualify as "altering" within the meaning of Labor Law § 240(1), it must not be "simple, routine" (Joblon v Solow, 91 NY2d 457, 465 [1998]), or cosmetic or decorative (Munoz v DJZ Realty, LLC, 5 NY3d 747 [2005]), and it must effect "a significant physical change to the configuration or composition of the building or structure" (Joblon, 91 NY2d at 465). "[A] change in structural integrity is not necessarily required to obtain Labor Law § 240(1) coverage" (Mananghaya v Bronx-Lebanon Hosp. Ctr., 165 AD3d 117, 124 [1st Dept 2018], lv dismissed 33 NY3d 969 [2019]), and work as simple as chiseling a small hole into the wall to run wires between rooms to install an electric wall clock has been found to be "significant" (Joblon, 91 NY2d at 465). Work "that affects a crucial building system," including the air conditioning system, can constitute "altering" (Mananghaya, 165 AD3d at 124). Here, plaintiff has, at a minimum, raised a question of fact as to whether he was engaged in alteration work covered by Labor Law § 240(1).
Finally, since the majority dismissed the entire complaint on the basis of the exclusivity defense, it also did not address defendant's argument that the motion court should have granted it summary judgment dismissing plaintiff's common-law negligence claim. I would reverse the motion court's denial of summary judgment to defendant dismissing plaintiff's common-law negligence claim, since plaintiff failed to rebut defendant's argument, either before the motion court or on appeal, that defendant was an out-of-possession landlord and that plaintiff failed to demonstrate "a significant structural or design defect that is contrary to a specific statutory safety provision" (Reyes v Morton Williams Associated Supermarkets, Inc., 50 AD3d 496, 497 [1st Dept 2008] [internal quotation marks omitted]). Accordingly, I would reverse the motion
court's denial of summary judgment dismissing plaintiffs' common-law negligence claim.
For the reasons discussed above, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020



Footnotes

Footnote 1: We reached this conclusion even though the motion court had determined that the two companies shared office space, defendant had an on-site manager at the building who assigned repair work to and had the power to fire employees of plaintiff's employer, defendant managed the payroll for plaintiff's employer, and plaintiff's employer was a named insured on defendant's liability insurance policy (Kolenovic v 56th Reality, LLC, 2015 NY Slip Op 30327[U] [Sup Ct, NY County 2015]) .

Footnote 2: Defendant also cites to Paulino v Lifecare Transp. (57 AD3d 319, 319 [1st Dept 2008]), noting that we found an alter ego relationship where the entities "operated under the control of the same parent corporation." However, that was not the sole basis for our finding in Paulino either. Rather, we also found there that the entities shared payroll services and an employee manual, and were covered by the same Workers' Compensation insurance policy (id.).

Footnote 3: I do not disagree with the majority that tax returns are frequently redacted in litigation to protect privacy. However, that is irrelevant here. The critical fact about the tax return of Hopkins Ventures in this record is that it does not mention either defendant or plaintiff's employer. Accordingly, it does not provide any evidence that the three LLCs functioned as a single integrated entity, and thus fails to contribute to defendant's burden to make out a prima facie case.

Footnote 4: The majority cites to Kolenovic (139 AD3d 588) and Carty (83 AD3d 529) as standing for the proposition that companies that are alter egos of one another "function much as joint venturers." However, neither of those cases so holds. Indeed, neither opinion refers to joint ventures at all.